# SUPREME COURT.

ALFRED E. BEACH agt. THE MAYOR, ALDERMEN, &C., OF
NEW YORK, THE COMMISSIONERS OF EMIGRATION, THE HEIRS
OF A. R. LAWRENCE, and others, in all ninety-five defend-
ants.

1. Under the provisions of the Dongan and Montgomerie charters, which
. granted to the mayor, &c., all the waste, vacant, unpatented and unap-
propriated land, lying and being within the city of New York, and
reaching to the low water mark, in, by and through all parts of said city
and Manhattan Island aforesaid, together with all rivers, rivulets, coves
creeks, ponds, waters and water-courses in the said city or island, or
either of them not heretofore granted, &c., the city of New York were
not vested with the title to the waste, vacant, unappropriated and
unpatented lands lying and being between high and low water mark
around Ward's Island, in the East river.

2. The Montgomerie charter extends the jurisdiction of the city of New
York to low water mark on the Long Island shore, including the islands
lying between Manhattan Island and Long Island, and extending from
Spuyten Duyvil creek along the low water line on the east or Westches-
ter side of the Harlem river to the East river, and thence to cross to
Long Island, and along the low water line on that shore to Red Hook,
including all the islands, &c. While this includes political jurisdiction
over Ward's Island, it is perfectly evident from other provisions of the
charter that it does not give proprietary right to the lands between high
and low water mark around Ward's Island.

3. The grant of the waste, vacant, &c., lands lying and being between
high and low water mark was confined to what was called the city, and
was extended to the land under water around Manhattan Island, and
such was its proper construction otherwise. The other provisions of the
charter would have conveyed to the corporation the river from Spuyten
Duyvil creek to the East river and that river to Red Hook, inasmuch as
among other things named in the grant are " rivers."

4. The grant made by the commissioners of the land office, on the 26th
. April, 1811, of the lands under water around Ward's Island from high
to low water mark and extending on the north-west side of said island

150 feet from low water mark towards New York Island, and from other parts of said island 300 feet from low water mark to Abraham R. Lawrence, Richard Lawrence, Jasper Ward and Bartholomew Ward, was good and valid, and vested in the grantees a title to the lands so conveyed.

5. Such grant is good, even though the grantees were not the owners of all the upland jointly, but were at the time owners in severalty of all the upland, excepting one or two lots. If they elected, they had a lawful right to take a joint grant of all the land under water adjoining the lands held by them in severalty.

6. In a deed containing these words in the granting clause, to wit: "All the right, title and interest which they (the said parties of the first part) now have or which they may hereafter have as heirs-at-law of Jasper Ward, late of the city of New York, merchant, deceased, in, of and to the *water right* or *water privileges* of, on or pertaining to that certain island of land and the roads on the same, known and distinguished as Ward's Island, located in the East river, and situated in the city and county of New York, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining, &c., &c,. to *tenendum in fee,*" the court held that the words "water rights" and "water privileges," with the terms "hereditaments and appurtenances," are sufficient to include and pass the grantor's interests in the lands under water, granted to him by the aforesaid patent.

7. Where in an action for a partition of lands under water one of the defendants, the city of New York, had erected on the premises held in common a dock, and set up such occupation by way of adverse possession, it was held that the land actually covered by the dock must be excluded from the partition, but the possession of the dock could not be held to constitute an adverse possession around the island to all the land between high and low water mark.

8. Such possession does not come within any of the rules laid down in 2 *R. S., 4th ed.,* 495, defining what occupancy is necessary to establish adverse possession.

9. Where the different patentees under the aforesaid water patent had also owned the upland and had surveyed such upland into divers lots butting on the water, and then had made partition among themselves of such upland lots, and from time to time thereafter had severally made conveyances of some of such upland lots butting on the water, with portions of the rights acquired under the water patent in part of said individual lots, it was held in an action of partition brought by the grantee of the residuary interest remaining in one of the patentees of the water patent aforesaid against the owners of the several rights and interests of the remaining patentees, and against the grantees of such portions of the water right as had been previously conveyed by the several patentees or

their heirs: (1st.) That as to such portions of the water right as had been conveyed by the patentee or his heirs whose residuary interest was vested in the plaintiff the same must be excluded from the partition. The plaintiff had no right calling for the exercise of the power of the court to order a sale of the property so conveyed before he acquired title. It never could be sustained to grant a judgment to sell property in which the plaintiff had no interest on his application, nor could an owner under such circumstances compel an owner of property to submit to the sale of his property at the suit of a person who had no right thereto. (2d.) As to the other parcels of said water right, in all of which the plaintiff had an interest, but in which the various defendants had dissimilar interests, the objection is that the same parties are not joint owners or tenants in common of all the property sought to he partitioned. This is a good objection if taken by answer or demurrer, but is too late if taken for the first time at the hearing.

10. Spaces of land laid out as roads, but not actually accepted or worked by the public authorities, and in a measure abandoned or disused, cannot be partitioned where there is a right of way over them for such of the owners of lots fronting thereon who have no other means of access thereto, nor where the owner of the lot claims to the centre of the road adversely to the plaintiff.

*Special Term.*

*Before* Hon. D. P. Ingraham, *J.*

*Tried during the year* 1871 *and finally decided in the March Term,* 1872.

This was an action brought by the plaintiff, as grantee of the heirs of Jasper Ward, against a large number of defendants, ninety-five in number, to have a partition and sale or a division of the following property situate on Ward's, formerly Great Barn Island, in the limits of the city and county of New York: Firstly. All the lands under water around Great Barn Island, situate in the East river or sound, in the city and county of New York, from high water mark to low water mark, and extending on the north-west side of said island, 150 feet from low water mark toward New York Island, and from the other parts of said island 300 feet from low water mark. These lands amounted to about eighty-eight acres of ground. Secondly. To have certain species of land, deline-

ated on the map of the island, made by William Bridges, city surveyor, in 1807, as streets or roads, and amounting, in space, to about fourteen acres of land, partitioned or sold.

The plaintiff is the one-quarter owner of said water rights and roads, excepting such portions as had been conveyed away by Jasper Ward in his lifetime. He acquired his title by conveyance from the heirs of Jasper Ward, one of the patentees of said water right and one of the original owners of the aforesaid roads.

In 1806 Great Barn Island, now called Ward's Island, became, by divers conveyances, the property of the following named persons in the following proportions, viz.: Jasper Ward, one-quarter; Bartholomew Ward, one-quarter; Richard Lawrence, one-quarter; Abraham R. Lawrence and Samuel Lawrence, one-quarter together.

These five gentlemen employed William Bridges, a well known surveyor of that day, who made a survey of the island; also, a map (now on file in the office of the register of deeds) of the city and county of New York. On this map there were laid out four roads, and the grounds were divided into seventy-seven lots, all of which butted on these roads, and fifty-two of said lots butted on the waters of the Harlem and East rivers, the Little and Great Hellgate.

They then partition these lands among themselves and execute mutual conveyances of the different shares to each other.

In the partition *Richard Lawrence* got divers lots, amounting to fifty-three acres one rood and two perches.

*Bartholomew Ward* got various lots, amounting to fifty-five acres one rood and eighteen perches.

*Jasper Ward* got a number of lots, in all fifty-three acres three roods and thirteen perches.

*Samuel and Abraham R. Lawrence* got the remaining lots, viz., in all, fifty-five acres and nineteen perches.

Samuel's share subsequently became vested in Abraham R. Lawrence.

In the partition deed the parties made the following covenant, viz.:

"And it is .nutually agreed by the said parties to these presents, and each of them doth covenar c with the other, that such parts of the said tract of land or island as are designated on the said map for roads shall forever remain open as and for public roads and highways."

None of the lands embraced within the water patent, nor those laid out as roads, were partitioned.

In March, 1810, Bartholomew Ward conveyed to John Fleetwood Marsh lots Nos. 32, 33 and 34.

No other conveyances of any of the other lots, according to the evidence, appears to have been made by any of the above original owners to any other person or persons before the granting of the water patent.

Prior to this conveyance to Marsh, however, and during the session of the legislature of 1809, an act respecting Great Barn Island was passed, viz.: March 24, 1809, Laws of 1809, p. 473 (5 vol. *Webster & Skinner's ed.*).

" Be it enacted by the people of the state of New York, represented in senate and assembly, that the powers of the commissioners of the land office under the eleventh section of the act entitled 'An act concerning the commissioners of the land office and the settlemet of lands,' shall be and hereby are extended to the waters adjacent to and surrounding Great Barn Island in the city and county of New York, and also to the land between high and low water mark on said island, provided that no grant made in pursuance of this act shall infringe the rights of the mayor or aldermen and commonalty of the city of New York, and provided that the navigation of the waters surrounding the said island shall not be affected thereby."

At that time, by chapter 69 of the Laws of 1801, sec. 11, the commissioners of the land office were empowered to grant so much of the lands under the water of navigable rivers as they shall deem necessary to promote the commerce of this

state: "Provided always, that no such grant shall be made to any person whatever other than the proprietor or proprietors of the adjacent lands." It then contained a provision as to giving notice.

Under these acts of 1801, as extended by the act of 1809, the commissioners of the land office issued and delivered a patent, under the great seal of the state, dated April 26, 1811, to Abraham R. Lawrence, Richard Lawrence, Jasper Ward and Bartholomew Ward, in which the people of the state conveyed unto said four parties "all the land under water round Great Barn Island, situate in the East river or sound in the city and county of New York, from high water mark to low water mark, and extending on the north-west side of said Island 150 feet from low water mark towards New York Island, and from the other parts of said island 300 feet from low water mark, together with all and singular the rights, hereditaments and appurtenances, to have and to hold unto said parties in fee." From the evidence it appeared that the spaces of land laid out as roads were never worked by the public authorities, nor accepted by them as public roads. They did not fall within the scheme of laying out the Island of New York, under the commissioners' map of 1811 and 1812, and were no more than private ways.

There was, prior to 1815, a bridge over the Harlem river, connecting Ward's Island with Manhattan Island. This bridge, about 1815 or 1816, was broken down, and thereafter the travel on the island ceased, and, excepting a few houses occupied by a few people, Ward's Island was almost uninhabited. The so-called roads became grass-grown, not used; other paths were made by cattle and people crossing lots, and it so remained until 1849, when the commissioners of emigration first moved on the island. The latter built buildings in and put fences across two of the so-called roads adjoining their property, plowed up a portion of the roads adjoining lots thirty-six to forty-three, inclusive, owned by them, and used such plowed fields as part of their grounds.

In 1852, the city of New York acquired title from Abraham R. Lawrence to lots Nos. 9, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 27, 32, 33 and 34, and also to the interest which Abraham R. Lawrence then had in and to the water rights in front of the lots just named.

In 1853, the city authorities moved on the island and built buildings thereon, and interfered with the easement by making some encroachment upon a portion of the roads.

In 1858, the present plaintiff acquired from Jasper Ward's heirs their title to so much of said water right as had not been before that time sold, and also their title to the spaces of land called roads. In 1868, this suit was commenced.

The complaint set forth in detail the history and chain of title.

To this complaint the city of New York interposed the following defenses, viz. :

1st. A want of knowledge sufficient to form a belief as to whether or not the rights and interests of the several parties to this action, other than these defendants, in and to the lands described and referred to in said complaint, are fully or correctly stated therein.

2d. That the city of New York is owner in fee of lots 9, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 24, 25, 26, 27, 32, 33, 34, 59, 60, 64, 65, 66, 67, 68, 69, 70; also of the lands between high and low water mark and under water to the exterior, a bulk-head line, as given and granted by the patents in said complaint mentioned, opposite and adjacent to lots 9, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 27, 32, 33 and 34, and also to the lands in front of all the said lots to the centers thereof, laid out as streets.

3d. Not sufficient knowledge, &c., as to the other allegations of the complaint.

4th. They assert they have expended moneys for the protection and improvement of the lands described in the complaint, and they are entitled to be allowed same.

The commissioners of emigration answer and set up:

1. That they are the owners in fee of the one-quarter of the water right under the patent from the state as aforesaid, opposite and adjacent to lots 1, 6, 29, 31, 42, 43 and part of 49, of the one-half opposite to lots 5 and 20.

2. That they have made divers improvements on the same, for which they are entitled to be compensated on such partition.

3. They own in fee one-half of the streets opposite their respective lots.

4. A want of knowledge sufficient to form a belief as to the facts averred in the complaint.

The answers of the other defendants are not material to advert to.

After issue joined, by consent of parties, it was referred to a referee to take proofs and to report on title. A very large amount of evidence was taken before the referee, and he made a report setting forth the different rights and interests of the parties. He also reported the evidence and exhibits taken before him, also a full and particular abstract of all the titles and interests of the different parties.

To this report exceptions were filed by the city of New York, the commissioners of emigration, the defendants Olmstead, Suydam and Van Suideren, and by the Lawrence heirs.

The whole case was brought to trial before Mr. justice INGRAHAM, on pleadings, proofs, report, abstract and exceptions, and was argued orally and also on printed briefs, by the following counsel:

DENNIS McMAHON, *for the plaintiff.*

RICHARD O'GORMAN and WILLIAM J. KANE, *for the City of New York.*

A. G. RICE, *for the Commissioners of Emigration.*

JNO. S. LAWRENCE and A. R. LAWRENCE, Junr., *for the Lawrence Heirs.*

A. UNDERHILL, *for the Heirs of Bolles.*

Beach agt. Mayor, &c., of New York.

D. H. Olmstead, *for the defendants Olmstead, Suydam and Van Sinderen.*

Jno. B. Ireland, *guardian ad litem and counsel for the Ireland Heirs.*

J. Lawrence, Slosson and Lawrence & Beekman, *for divers defendants.*

Davies & Work, *for the Mutual Life Ins. Co.*

Nicholl, Hunston & Ames, *for various defendants.*

After several months' deliberation, the justice expressed a doubt on one point raised by the corporation counsel, viz.: "That the plaintiff's complaint should be dismissed because that the plaintiff does not claim that he has any interest or estate in all the lands sought to be partitioned as joint tenant or tenant in common with all the defendants, nor have all of the defendants an interest or estate as joint tenants or tenants in common with him or with each other in all the said lands."

And judge Ingraham ordered a reargument on that point.

Dennis McMahon, for the plaintiff; Abraham Underhill, for the Bolles heirs; Richard O'Gorman and William J. Kane, for the city, and Jno. S. Lawrence, for the Lawrence heirs, were heard on that point.

After mature deliberation, the court delivered the following opinion:

Ingraham, *J.*—I shall consider the rights of all the parties interested in, or claiming so to be, as settled by the referee in all respects, except where exceptions have been filed to the report; and, as to them, will dispose of them as they are presented by each of the parties in their exceptions, but without examining each exception separately.

First. As to the exceptions taken by the counsel for the mayor, &c., of New York, these apply generally to the rights of the plaintiff to maintain his action. First, because the title to the property sought to be partitioned is in the city, and because the deed by the commissioners of the land office is void; therefore this objection is based on the supposed

right of the city, from the provisions of the Dongan and Montgomery charters, which granted to the mayor, &c., all the waste, vacant, unpatented and unappropriated land lying and being within the city of New York, and reaching to the low water mark in, by and through all parts of said city and Manhattan Island aforesaid, together with all rivers, rivulets, coves, creeks, ponds, waters and water-courses in the said city or island, or either of them, not heretofore granted, &c.

The Montgomery charter describes the jurisdiction of the city as extending to low water mark on Long Island shore, and including the island between Long Island and Manhattan Island, and extending from Spuyten Duyvil creek, along the low water line on the east or Westchester side of the Harlem river to the East river, and thence to cross to Long Island and along the low water line on that shore to Red Hook, including all the islands, &c.

There can be no doubt but that, in this jurisdiction, the island in controversy was included; and the question raised by the counsel of the corporation is as to the extent of the grant made to the city in that charter of all the waste, vacant, unappropriated and unpatented land, lying and being within the said city of New York, and on Manhattan Island aforesaid, *extending to low water mark.*

The counsel for the city claims that this grant carries the land under water owned by the island referred to. I think not.

It is evident, from the other provisions of the charter, that such was not the intent of the grant. It was confined to what then was called the city, and was extended to the land under water around Manhattan Island.

If the views of the counsel for the corporation are correct, the other provisions of the charter would have conveyed to the corporation the river from Spuyten Duyvil creek to the East river, and that river to Red Hook, because, among other things named in the grant, are included all rivers.

The proper construction of the grant is to confine it to the city, and to Manhattan Island.

The distinction I have taken between the jurisdiction of the city for the purpose of government and as to the rights of property under the grant is sanctioned by judge HOFFMAN, in his work entitled " A Treatise on the Estate, &c., of the Corporation" (*p.* 165), where he speaks of the distinction as to the boundaries of New York on a point of jurisdiction, and one on the right of property.

Another objection is that the plaintiff shows no title in him to the lands to be partitioned.

The grant from the state is ample to vest in the grantees a title to the land conveyed if they are competent to take such a title.

It is objected that they were not at the time owners of the upland. They were not owners of the whole of the upland jointly; but they were at the time owners of all the upland, excepting that one Marsh owned some lots conveyed previously. As to the other owners, I see no reason why, if they so elected, they might not have taken a joint grant of all the land under water adjoining the lands held by them in severalty.

They were the owners of the upland; they might have conveyed their interest to any one of their number, or they might, as they have done here, unite in taking a joint conveyance, and held the same jointly.

It may admit of some question whether the intermediate conveyances, after the patent from the State was obtained, conveyed the land under water by the term water rights and water privileges, of, in or pertaining to the island.

The cases cited by the defendants do not apply to this case.

In *Nostrand* agt. *Duiland* (21 *Barb.*, 478) the conveyance was merely of a stream and pond of water and saw-mill.

So in *Jackson* agt. *Hulsted* (5 *Cow.*, 461) it was held that a lease of certain premises, including a river, did not pass title to the land under the river.

On the other hand, there are cases where the description

in the deed of a pool, a gorge or a deep pit of water is held sufficient to carry the land.

I am of the opinion that the words here used, water rights and water privileges, with the terms hereditaments and appurtenances, are sufficient to include the land under water.

There are no water rights except under the patent, and no water privileges except by filling to change the land under water to upland. Unless this interpretation is given to this description the words would be meaningless.

Another objection is that this property is held adversely by the city, and therefore cannot be partitioned. If there was any proof to show adverse possession by the city authorities, the objection would be a good one; but there is no such evidence. All the possession shown on behalf of the city is the building of a dock for their convenience into the river.

Whether such dock extends beyond low water mark or not does not appear. If it does it becomes a purprestrue or nuisance, which might be removed at any time as such. So far as the city occupied the land under water between high and low water mark a claim of title, it should be excluded from any decree of sale or partition in this action.

The title between the claimants and the city must be settled by a direct action for the possession. Such possession cannot, however, be extended in such a case as this beyond the land actually occupied. The building of a wharf can never constitute an adverse possession around the island to all the land between high and low water mark. It does not come within any of the rules laid down in 2 R. S., 4th ed., 495, defining what occupancy is necessary to establish adverse possession.

That such possession of a part of tract is not sufficient to cover the whole tract is held in *The People* agt. *Livingston* (8 *Barb.*, 255); *Sharp* agt. *Brandon* (15 *Wend.*, 597); *Munro* agt. *Merchant* (26 *Wend.*, 387, 404).

It is contended also on the part of the mayor, &c., that the parties to the action are not tenants in common of all the pro-

Beach agt. Mayor, &c., of New York.

perty sought to be partitioned, and that the action, therefore, cannot be maintained.

This objection is taken also by some of the other defendants.

This objection is not free from difficulty. So far as it relates to the conveyance by Ward before the plaintiff became the owner of any interest in the water right or lands under water, there can be no doubt that the action cannot be maintained.

The plaintiff has no right calling for the exercise of the power of the court to order a sale of the property. It never could be sustained to grant a judgment to sell property in which the plaintiff had no interest on his application, nor could a plaintiff under such circumstances compel an owner of property to submit to the sale of his property at the suit of a person who had no right thereto.

It is clear that a stranger could do no such thing if he brought such an action simply for the partition of lots so situated, and I think it equally clear that he can obtain no such right by connecting with those lands others in which he has an interest.

So far as this action relates to these parcels, the complaint must be treated as dismissed.

The other objection is that the same parties are not joint owners or tenants in common of all the property sought to be partitioned.

By 2 R. S., p. 242, the right to proceed by petition is given where several persons hold any lands, &c., as joint tenants or tenants in common; and by section 81, p. 253, the same power, either by petition or bill, is given to the court of chancery. That power now being vested in this court, these provisions apply to proceedings in this court whether by petition or action.

In *Haas* agt. *Dorland* (11 *How. Pr. R.*, 489) it was held that where was an outstanding life estate, a partition could not be had on the application of one who had an interest in the fee.

The same principle was decided in *Brownell* agt. *Brownell* (19 *Wend.*, 367).

In *Clapp* agt. *Bromaghim* (9 *Cowen*, 531, 565) it was held that the parties to the partition must hold the estate in common; and that a plea of non-tenant in servial was a good plea.

In *Jackson* agt. *Myers* (14 *John.*, 354) it was held that all the parties must be tenants in common of the lands to be partitioned. Chancellor JONES, in *Clapp* agt. *Bromaghim* (*supra*), says: "The estate to be divided must be held by the parties to the partition in common, and the general defense against the petition for a division is that the petitioners and the defendants do not hold together."

This was the substance of the demand, and of the general defense in the writ of partition. I think there can be no doubt but that if the defendants had raised the objection to this complaint by demurrer or answer that all the defendants were not interested in the property sought to be partitioned that such defense would have been a good one, and the complaint would have been dismissed.

Not having done so in any case, it seems to be the rule that they cannot take the objection on the hearing. This is stated by Story in *Equity Jurisprudence*, § 656, where he says courts of equity will have regard to the legal and equitable rights of all other parties interested in the estate which have been derived from any of the tenants in common, and will, if necessary, direct as distinct partition of each of several portions of the estate in which the derivative alienees have a distinct interest in order to protect that interest. He refers to the case of *Story* agt. *Johnson* (1 *Young & Coll.*, 538; 2 *Young & Coll.*, 586); where two estates were partitioned among different parties; the difference being occasioned by a conveyance of an interest in one of the estates to another party by one of the original tenants in common.

The defendants not having taken this objection by demurrer or answer must be deemed to have waived the same, and cannot now raise it on the hearing.

Beach agt. Mayor, &c., of New York.

The objection to a partition of the roads is well taken. Those roads, in many instances, are subject to a right of way over them for such of the owners of lots fronting thereon, who have no other means of access to their lots.

In some cases, also, the owner of the lot claims to the center of the road adversely to the claim of the plaintiff.

For these reasons I am of the opinion the action cannot be maintained as to these roads.

The interests of the several parties in the different portions of the land have been set out in the referee's report, and are not objected to as there stated, except in a few instances which are admitted by the plaintiff's counsel. Those errors must be corrected in the judgment; and in other respects the report is confirmed as to such interests in the land under water and below high water mark around the island, excepting those portions in front of the termination of the roads, and the pieces claimed to be held adversely to which I have before referred.

The remaining question is as to the propriety of a sale of this land. Many of the owners ask for a partition; and, as to those owning large portions, I see no reason why such partition should not be made.

The statute provides that a partition in part can be made and a sale ordered of such portions as cannot be properly partitioned. Such, I think, should be the provisions of a judgment in this case.

1. My conclusions are that the pieces of land owned by some of the defendants in which the plaintiff has no interest, and such pieces of the land between high and low water as are held adversely for wharves, and the roads with the land below high water in front of the termination of such roads, must be excluded from this partition; and the defendants who are interested therein, and have no interest in any other portion of the lands sought to be partitioned, may have the complaint dismissed as to them with costs.

2. That commissioners shall be appointed to make parti-

tion as far as may be done among the several owners, or to such of them as so consent in writing their shares in common.

3. That such portions as cannot be so partitioned without detriment to the value thereof, to be ascertained by the report of the commissioners, be sold and apportioned to the defendants whose shares are not set off to them as before provided.