## NOSTRAND *vs.* DURLAND.

A grant of a "stream and pond of water and saw mill thereunto belonging," does not convey to the grantee the land covered by the waters of the stream and pond. BROWN, J., dissented.

Ordinarily, a grant of water, under any designation, does not convey the land which it covers. In order to pass the title to the land, the word "land," or something equivalent to it, should be inserted in the conveyance.

*It seems* that in grants for milling purposes the intent of the parties is generally to limit the interests conveyed to the use of the water, and of the land which it covers, so far as the same may be necessary for the operations of the indicated employment. They do not, ordinarily, design that if the mill should fail and the pond should entirely subside, the mill owners shall be entitled to the land once covered by the pond. *Per* S. B. STRONG, J.

Upon this principle the mill holders have the right to use the waters, so long as they choose to employ them for the designated purposes, and the land owners retain the right to enjoy their property in any manner that shall not prejudice the exercise of the privileges which they have conveyed to others. *Per* S. B. STRONG, J.

Nostrand *v.* Durland.

MOTION to set aside a nonsuit, and for a new trial. The complaint was for trespass *quare clausum fregit*, and alleged two distinct acts of trespass upon the plaintiff's premises, describing the said premises as a certain parcel of land, pond and saw-mill standing thereupon, situate at Springfield in the town of Jamaica, Queens county, (together with the stream and pond of water thereto belonging, and the privilege of raising the water in said pond as high as is necessary for all uses and purposes of said mill.) The defendant, by his answer, denied that the plaintiff was the owner in fee of the premises described in the complaint, or the owner of any of the land under water included within the premises as bounded and described in the complaint; and alleged that as to all the land under water on the westerly side of the pond, whereon the trespasses were alleged to have been committed, he the defendant was the owner thereof in fee, and entitled to cut and use the wood and timber growing thereon, and denied the commission of any trespasses upon the plaintiff's premises as averred in the complaint. On the trial, at the Queens circuit, in November, 1854, before Justice ROCKWELL, it was admitted that Daniel Smith formerly owned the premises, and that he was the common source from whom both parties claimed to derive title. The defendant was the riparian owner on each side of the stream or pond. Deeds from Smith to Nathaniel Nostrand and George Nostrand and from the latter to the plaintiff were introduced in evidence. And testimony was given in relation to the commission of the alleged trespasses by the defendant. When the plaintiff rested, the defendant moved for a nonsuit, on the ground that the plaintiff had not shown any title in himself to the premises in question, and that he had failed to make out his case by showing acts of possession or otherwise. The court granted the motion, and the defendant excepted.

*John J. Armstrong* and *Wm. J. Cogswell*, for the plaintiff. I. The evidence given upon the trial of this action was amply sufficient to maintain the action. (1.) It showed that the premises were in the possession and occupation of the plaintiff, at the

time the injuries complained of were committed, the commission thereof by the defendant, and the damages sustained by the plaintiff thereby. (2.) It showed not only possession, but also title in the plaintiff to the *locus in quo* in fee simple. The words of the deeds descriptive of the premises granted, viz : " pond of water," are sufficient to convey the land. The term " pool," will pass land covered with water. (3 *Cro. Jac.* 150. 1 *Lev.* 44. *Coke Litt.* 5. 2 *Hilliard on Real Property*, 339. *Adams on Eject.* 18.) The words " pool" and "pond" are synonymous, and mean a small collection of water, either with or without an outlet. ( *Webster's Dict. p.* 845, 6. *Worcester's Dict.* 549.) (3.) Land under water passes as land within the bounds mentioned in the deed or grant. (*Rogers* v. *Jones*, 1 *Wend.* 237.)

II, The plaintiff was entitled to the exclusive possession and use of the pond as well as to the privilege of raising the water in the pond as high as was necessary for the purposes of his mill; and for an injury to this right he was entitled to recover. (*Jackson* v. *Buel*, 9 *John.* 298.)

III. The nonsuit was therefore erroneously granted, and should be set aside.

*J. G. Lamberson*, for the defendant. I. The plaintiff on the trial showed no act of possession or ownership of the soil upon which the alleged trespasses were committed. His use of the water for the purpose of turning his mill was but as an easement or incorporeal hereditament, and perfectly consistent with the defendant's right to the soil. Trespass *quare clausum fregit* can only be maintained by a plaintiff having actual possession or legal title drawing possession after it. (*Holmes* v. *Seely*, 19 *Wend.* 509. 1 *John.* 512. 12 *id.* 184. 9 *id.* 16. 10 *Wend.* 639. *Saund. Pl. and Ev.* 866, 868, *and cases there cited.*) The evidence in the case only shows acts of ownership by the defendant.

II. As to title. The complaint in substance, and the evidence according to the truth of the case, shows that the acts complained of were done and committed on the defendant's own soil, he being riparian owner. The deeds to the plaintiff's im-

mediate grantors (although not admissible in evidence against the defendant) convey no title to the *locus in quo.* They purport to convey " all that stream and pond of water with the saw mill thereunto belonging." A grant in such language conveys no title to the soil, but simply the use of the water. A grant of a river or stream of running water will not pass the soil. (*Jackson* v. *Halstead,* 5 *Cowen,* 216. *Angell on Water Courses, ch.* 1, § 5.) The common law doctrine that the riparian owner is prima facie owner to the middle of the stream prevails here. (6 *Cowen* 518, 551. *Child* v. *Starr,* 4 *Hill,* 369. 5 *Wend.* 423. 20 *John.* 91. *Angell on Water Courses, ch.* 1, § 11, *and cases cited.*)

III. The judgment below should be affirmed.

S. B. Strong, J. This is an action for breaking and entering the plaintiff's close, and cutting down and carrying away the trees standing upon one part of it, and carting and depositing sand and dirt upon another part of it, and by the latter grievance diminishing the quantity of water to which the plaintiff was entitled for the use of his mill. Although the forms of action formerly adopted were abolished by the code, yet the substantial rules governing the rights of action, and their statement in the pleadings, must still generally prevail. Otherwise, except in a few instances specified in the code, we have none, and we have arrived at that state described in the maxim *misero est servitus, ubi lex est vaga aut incerta.* One of those rules, and certainly a very reasonable one, is that for the causes of action on which the plaintiff relies he must, in order to maintain his suit, show that the place upon which the wrongs are alleged to have been perpetrated, is for the purposes of the action, his close.

The plaintiff claims the land on which the trees were felled, and the earth was deposited, under a grant for " all that certain stream and pond of water and saw-mill thereunto belonging situate on the west side of the Springfield road" in the town of Jamaica in the county of Queens, and bounded partly by a dam and partly by the lands of the riparian owners. There is also

Nostrand *v.* Durland.

a conveyance of a small tract of land adjoining the saw-mill (but which was not the site of any of the alleged wrongs) " with the privilege of raising the pond as high as is necessary for all uses and purposes of said mill."

The plaintiff supposes that his grant conveyed to him in fee simple the land covered by the waters of the stream and pond. Ordinarily, a grant of water, under any designation, does not convey the land which it covers. In order to pass the title to the land, the word "land," or something equivalent to it, should be inserted in the conveyance. In the case of *Rogers* v. *Jones,* (1 *Wend.* 237,) the patent was for all the tract of *land* within certain boundaries which included the harbor of Oysterbay, and it was therefore very properly decided that the title to the *fundus* of the waters passed to the grantee. In the case of *Jackson* v. *Halstead,* (5 *Cowen* 216,) it was held that a lease in fee of certain premises including a *river* did not pass the soil under the water, and the court cites with approbation a remark of Ld. Coke, (*Co. Litt.* 4 *b,*) " that if a man grant *aquam suam* the soil shall not pass," and also *Comyn's Digest, tit. Grant, E* 5, as recognizing the same rule. There are terms, however, which designate both land and water, and by which the land will pass. Lord Coke says, in a passage cited by the plaintiff's counsel, (*Co. Litt.* 5 *a,*) that " stagnum, in English a pool, doth consist of water and land, and therefore by the name of stagnum, or a pool, the water and lands shall pass also. In the same manner gurges, a deep pit of water, a gors or golfe, consists of water and land, and therefore by the grant thereof by that name the soil doth pass." The reasons assigned by the learned commentator would seem to be equally applicable to a river or a pond, for it is difficult to conceive of either without a bottom to it; still the exclusion of both from the same category has been definitely settled. The boundaries specified in the plaintiff's deed are of the waters only and not as the limits of the lands of the adjoining owners. That would seem to result from something like necessity, as the margin of the pond must frequently change, from natural causes, and in this instance its extent might be increased by the plaintiff under the privilege express-

ly granted by his deed. I am strongly inclined to think that in grants for milling purposes the intent of the parties is generally to limit the interests conveyed to the use of the water, and of the land which it covers, so far as the same may be necessary for the operations of the indicated employment. They do not, ordinarily, design that if the mill should fail and the pond should entirely subside, the mill-owners should be entitled to the land once covered by the pond, with its indefinite and meandering boundaries. The principle, which I suppose has been fully settled by authority, would seem, therefore, very properly to effectuate the intentions of the parties interested. The mill-holders have the use of the waters so long as they choose to employ them for the designated purposes, and the land-holders retain the right to enjoy their property in any manner which shall not prejudice the exercise of the privileges which they have conveyed to others.

The plaintiff did not prove any title to the trees which were cut, or any privilege extending over the land on which they stood, except to overflow it with his pond, if that should become necessary for the purposes of his mill. One of his own witnesses testified that it was above where the pond stopped that the trees were cut off. As to that alleged trespass there was therefore an entire failure of any proof to sustain the action.

The defendant, however, perpetrated a wrong in filling up a portion of the pond ; especially as he thereby covered up some of the springs. Although the plaintiff's witness who alone testified as to the effect of this operation, said that he " could not discover, by his eye, that the filling in lessened the quantity of water," and that he " did not observe that there was less water, in using the mill, after filling in," yet he would have had a right to submit the question whether he was not entitled to some (possibly nominal) damages to the jury, had his action been rightly conceived. But he had based it upon a wrong foundation. His complaint, as to that, was for breaking and entering his close and carting and depositing sand upon it, *thereby* lessening the quantity of water to which he was entitled. The diminution of the quantity of water was set forth as the conse-

quence of an illegal act ; and as the cause *as assigned* failed, that was fatal to the alleged effect.

Upon the whole the nonsuit seems to have been right, and the motion for a new trial should be denied.

ROCKWELL, J., concurred.

BROWN, J., dissented.

New trial denied.

[DUTCHESS GENERAL TERM, April 8, 1856. *Brown, S. B. Strong* and *Rockwell*, Justices.]