(9 App. Div. 151.)

### DEUTERMAN et al. v. GAINSBORG et al.

(Supreme Court, Appellate Division, Second Department. October 6, 1896.)

APPEAL–REVIEW—INFERENCES FROM DOCUMENTS.

The appellate division of the supreme court will not reverse the decision of a trial court based on inferences from written documents, unless it affirmatively appears that the court erred in the decision.

Appeal from special term.

Action by Charles Deuterman and others, as executors, etc., against Samuel H. Gainsborg and another, to restrain the defendant Gainsborg from emptying sand into a pond, etc. From a judgment on finding for defendant, plaintiffs appeal. Affirmed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Eugene Frayer, for appellants.

Wilson Brown, Jr., for respondents.

CULLEN, J.   The plaintiffs, claiming to own a mill dam, mill seat, and mill pond, including the lands under the water of the pond, brought this action to restrain the defendant Gainsborg, the owner of land abutting the pond, from emptying sand, muck, or obnoxious matter into the pond, and to recover damages.   The defendant answered, denying title in the plaintiffs to the easterly half of the lands under the lake or pond, and also denying that the defendant had interfered with the plaintiffs' water rights or privileges.   The defendant prayed for an affirmative judgment establishing the boundary line between his lands and the plaintiffs' lands under the waters of the pond; and also determining the plaintiffs' water rights and privileges in the pond.   On the trial the claim for damages was withdrawn, and the sole question litigated between the parties was the title of the defendant to the lands under the water of the easterly half of the pond. The title of the plaintiffs to the mill dam and sites, and to the use of the water of the pond for milling purposes, was conceded.   The court decided the issue litigated between the parties in favor of the defendant holding that the plaintiffs had not established their title to the lands in dispute.   On this appeal the parties raise no other question than that thus litigated and determined in the trial court.

It seems to be the settled rule of law in this state that, in the case of streams, ponds, or lakes, the adjoining proprietors are prima facie and presumptively the owners of the soil under water to the center of the stream or pond, as is the case with highways.   This presumption may be rebutted, but, till rebutted, the presumption remains.   Child v. Starr, 4 Hill, 369; Nostrand v. Durland, 21 Barb. 478; Smith v. City of Rochester, 92 N. Y. 463; Gouverneur v. Ice Co., 134 N. Y. 355, 31 N. E. 865.   In the present case the title of the defendant Gainsborg to the abutting upland is not attacked.   Therefore he is presumptively the owner of the adjacent land under water to the center of the pond, and it is incumbent upon the plaintiffs to establish affirmatively a superior title in themselves.   This they have attempted to do by a series of deeds placed in evidence.   The trial court found that these deeds did not establish the plaintiffs' title to the land in dispute; and it is the correctness of this decision that we are now called upon to review.

The original source of title to the premises in dispute is a grant from the crown, made March 13, 1721, to several named persons, of a tract of over 4,000 acres.   Neither of the parties have been able to trace their title back to the grantees in that patent.   The first deed produced by the plaintiffs is from Daniel Brundeg to Eleazer Yeomans, and bears date December 28, 1730.   It conveys "one certain corn mill, and all belonging unto it, standing near the upper end of the White Plains purchase, & all the land beginning," etc.   The description in this deed gives no courses or distances, refers to no known

road or highway, or to any monuments except marked trees and saplings. It would seem to include one-half of a mill pond from the fact that one line in the description runs along "the long Middow brook till it comes to the said mouth of the ditch that leads from the mill," but there is nothing to show which side of the mill pond is included. It is wholly impossible to now locate that mill pond from the description, and so the trial court found. The next conveyance, dated February 23, 1739, from Walter Williams to Eleazer Yeomans, conveys a tract of 80 acres, bounded east by the Mamaroneck river, and westerly by the brook in the mill pond, northerly by David Purdy's land and Yeomans' own land, and southerly by Yeomans' own land and Daniel Cornwell's land and Caleb Hyatt's land. The next deed is from Jacob Cornell to said Yeomans, dated March 1, 1741. It conveys a tract of land at Brown's Point, being the equal half of a lot that formerly belonged to Caleb Hyatt and John Haight. The description reads: "Beginning at a maple tree by the mill dam, thence running southerly by the mill brook to a butternut staddle, thence running easterly by the land of Daniel Cornell," etc. The trial court found that the deed from Williams to Yeomans embraced a portion of the lands of the defendant, and that the brook in the mill pond, mentioned as its westerly boundary, was the brook in the pond here in dispute. Of course, this is in fact a matter solely of argument from the internal evidence of the deeds themselves, the character of the descriptions, and the names of the adjacent owners mentioned in the deeds. The defendant complains of this finding, but we think that it is correct, for the subsequent deed from Cornwell to Horton, hereafter to be mentioned, which is concededly a link in the defendant's chain of title, by its description would seem to convey the same tract as that conveyed from Williams to Yeomans. We think it probable that the deed from Williams to Yeomans conveyed a tract immediately north of the mill dam, and that from Cornell to Yeomans one immediately south of it, and that the only land that Yeomans had between these two plots was the mill dam itself. On May 3, 1744, Yeomans conveyed to John Horton "one certain house and barn and corne mill and tract of land situate, lying, and being in the White Plains and Harrison's purchase, butted and bounded as follows: Beginning at a cheri tree standing near the house, from thence westerly to a heap of stones," etc. The description in this conveyance, like that from Brundeg to Yeomans, states no distances. The courses are given in the most general manner, either as northerly or southerly, and the monuments are such as cannot now be located, being marked trees and heaps of stones. Wherever the mill pond conveyed by this deed was, the description would seem to include the whole of it, as it runs up on one side and down on the other. The contention of the plaintiffs is that this deed conveys the locus in quo, to which they claim they have shown title in Yeomans by the deeds before referred to. The trial court found that this deed did not convey the bed of the pond, and that the lands and property described in it could not be located or identified as the premises of the plaintiffs or the bed of the present lake. The plaintiffs claim through this deed to Horton. There is no pretense that subsequent to the time of this con-

veyance Horton or his successors in title have acquired the bed of the lake from the abutting owners on its easterly side. We think also it is clear that there was no such possession of the locus in quo by the parties on either side of this litigation or their predecessors in title as would either establish a title by adverse possession or be sufficient to justify the presumption of a grant. Hence the question as to what lands were embraced in this conveyance is the vital point in plaintiffs' case. The question, however, is one solely of fact, and, while it is a question of fact not arising from conflicting statements of witnesses, but from inferences from written documents, we think the same rule applies to its determination by the trial court as applies to other questions of fact; that is to say, this division of the court is not justified in reversing the determination of the trial court unless it affirmatively appears that the trial court clearly erred in its decision. Aldridge v. Aldridge, 120 N. Y. 614, 24 N. E. 1022; Barnard v. Gantz, 140 N. Y. 249, 35 N. E. 430.

Before proceeding to discuss what lands are included in the deed to Horton, we shall examine the title of the grantor, Yeomans. Assuming that the tract conveyed by Williams to Yeomans is the tract afterwards conveyed to Elisha Horton on the easterly side of the pond, and adjoining the dam, we think it is plain that no title has been shown in Yeomans to any land on the easterly side of the lake, north of Williams' north line. No deed of any such lands has been produced. The only evidence given by the plaintiffs to support this claim is the statement in the deed from Williams that his plot was bounded northerly by David Purdy's land and said Yeomans' own land. We doubt if this declaration in the plaintiffs' own chain of title is evidence in their favor, but it is unquestionably evidence against them that land to the north of Williams was at the time of his conveyance owned by Purdy. It appears that on October 6, 1752, Purdy conveyed his tract to Michael Chatterton. By the description in that deed the westerly boundary is given as follows: "Thence westerly to a stake standing near the large white oak tree by the above said mill pond; thence running southerly along said mill pond to the rock where it first began." This description would include the adjacent half of the pond if the grantor owned it. From the description and character of the tracts conveyed by Williams and Cornell, it would seem probable that this part of the lands granted by the original patent was laid out in strips from the Mamaroneck river, running westerly to the brook which formed the pond. If this were the fact, Purdy must have owned to the center of the brook, and there is nothing to show that he ever parted with it to Yeomans. Therefore the plaintiffs have shown no title north of the dividing line between Williams and Purdy.

We will now return to the question whether the deed to Horton conveyed or assumed to convey the pond in dispute. The evidence and argument in favor of the affirmative of this proposition is substantially as follows: The deed conveyed a mill pond. If the Williams tract was part of the premises now owned by the defendant, it would establish that at the time of its conveyance to Yeomans, in 1739, there was a mill pond on the site of the present pond, for the west boundary of that tract as given by the deed is "the brook in the mill.

pond." So, also, in the deed from Cornell to Yeomans, of 1741, the description reads: "Beginning at a maple tree by the mill dam," thus confirming the statement in the Williams deed of the existence of a mill pond. On March 30, 1748,—less than four years after the conveyance from Yeomans to Horton,—one Daniel Cornwell conveyed to Elisha Horton a tract of 69 acres, concededly part of the land now owned by the defendant. Part of the description in this deed reads: "Beginning at the northeast corner of John Horton's mill dam at a white oak bush, running eastwardly," etc. This shows that at the time of this deed there was not only a pond on the site of the present lake, but also that that pond was John Horton's. There is no evidence that John Horton ever acquired any other mill pond than by the conveyance from Yeomans, though it does appear that there were several mill ponds in the vicinity, one of them but a short distance from the pond in suit, and flowing into the latter. This, it is claimed, establishes that the pond conveyed by Yeomans to Horton must have been this pond. On the other hand, as tending to rebut the claim of the identity of the pond in the Horton deed with that in suit, we have, first, the description in the deed. It is doubtful whether that can be reconciled with any description of the present pond. Commencing below the mill dam, the description carries the boundary, in terms, up to and so as to include a lot bought by Yeomans from Jonathan Lane as it was then laid out. The deed from Jonathan Lane to Yeomans, dated February 9, 1740, conveyed a tract containing four acres, bounded westerly by the highway running through the hills, northerly by the lot of Henry Disbrow, easterly by the Yeomans mill brook, and southerly by the heirs of Lynch. It appears that the road through the hills, and the stream which feeds this pond, do not come in sufficient proximity to enable a lot of four acres to be laid out in any reasonable shape, until at a distance of a mile or more from the pond. It is practically impossible or improbable to the last degree that the premises granted by this deed could have extended any such distance, for the area of land granted was but 60 acres. The present pond contains 47 acres. So, if this is the pond described, it would leave but 13 acres of upland to pass under the deed. The deed fails to make any reference to the road and highway which passed over the dam. This road is one of the oldest in the county, being the main road from White Plains to Bedford, and, as appears by recitals in other conveyances, must have been laid out at an earlier period. It certainly was in existence four years later, for in the deed from Cornwell to Horton, already mentioned, the description twice refers to it. The land conveyed by the deed from Yeomans to Horton is in part bounded by the land of David Ogden. It cannot be found, by the records, that a David Ogden at any time owned land in this vicinity.

It is also urged, as tending to disprove the claim that the Williams tract was located on this pond, that, if so located, it is the same tract subsequently conveyed by Cornwall to Horton, nine years after the conveyance from Williams to Yeomans, yet no conveyance from Williams to Cornwall is to be found. It is claimed that this tends to disprove the identity of the two tracts; and, the proper location of the Cornwall tract being conceded, it tends to show that the Williams

tract should be located in some other place. Such, in brief, are the arguments on each side. If I were compelled to answer, as an historical question, whether the deed to Horton conveyed this pond or not, and not suffered to plead insufficient knowledge, I would say that it did, though I am strongly of opinion that, if such were the case, the pond, as it then existed, must have been much smaller than the present one. But I am not prepared to say that the contrary conclusion arrived at by the trial court was clearly erroneous.

Further, I am of opinion that, while the facts recited may show that the balance of the probabilities are in favor of the proposition, still it may be doubted whether they are sufficient, as legal evidence, to establish it. Therefore I think we are not justified in disturbing the finding of the trial court.

As already stated, the questions reviewed in themselves dispose of this deed adversely to the plaintiffs. It is, therefore, not necessary to discuss the other questions in the case. We think the testimony of Loretta Horton was improperly admitted, but, in our view of the case, it worked no harm to the plaintiffs.

The judgment appealed from should be affirmed, with costs. All concur.