WYANDANCH CLUB, Appellant and Respondent, *v.* LEWIS W. DAVIS, Respondent and Appellant.

*Real property — claim of title under a devise in a will — rebutted by deeds of the land in question from a third person to one of the devisees executed some years after the testator's death — no property in the corpus of running water.*

In an action in equity to restrain the defendant from excluding the plaintiff from its enjoyment of certain lands under a pond and the fishing and boating incident thereto, it appeared that the title to the land under the waters of said pond and to certain of the lands surrounding it, was at one time in Paul T. Smith, who left a will, devising certain real estate, without giving any specific description of the land under the waters of the pond, to his sons Caleb and Theodorus, through whom the plaintiff claimed; that some four years after his death, one Moses Brush conveyed to Theodorus Smith and Richard Smith, sons of Paul

T. Smith, one equal undivided half of the mill pond by a warranty deed, reciting that it was "formerly the property of Paul T. Smith," and that some three years thereafter the said Moses Brush conveyed to the said Richard Smith, by a warranty deed, the other undivided half part thereof.

No title to the land under the mill pond was shown in Moses Brush, nor was it shown that the title was in Paul T. Smith at the time of his death.

*Held,* that the fact that the sons of Paul T. Smith were the grantees in the warranty deeds executed after their father's death, and at a time when they must be presumed to have had all of the facts fresh in their minds, was sufficient to justify the trial court in presuming that Paul T. Smith had executed a grant of the premises to Moses Brush or his grantors ;

That this presumption was strengthened by evidence that the defendant (who claimed under Moses Brush) and his grantors had been in the actual possession of the property, asserting, in so far as the property was capable of manifesting such an assertion, full ownership of the same from the time of the grant by Moses Brush ; that the plaintiff had recognized such ownership by entering into a lease of such property with the defendant, and that it was only after the plaintiff had become possessed of a quitclaim deed of certain of the grantees of the owners of the adjacent property, in which mention was made of the property of the defendant, that it had undertaken to assert title to the fee of the land, which would carry with it the right to use the pond for boating, fishing and other purposes.

While the right to the use of water in a stream, as it flows along in a body, may become a property right, yet the water itself, the *corpus* of the stream, never becomes the subject of fixed appropriation or exclusive dominion, in the sense that property in the water itself can be acquired or become the subject of transmission from one to another.

APPEAL by the plaintiff, the Wyandanch Club, from that portion of a judgment of the Supreme Court, entered in the office of the clerk of the county of Suffolk on the 20th day of November, 1897, which adjudges that the defendant is the owner in fee simple of the mills, ponds and dams therein referred to, and the lands thereunder, and that the plaintiff has no right, title or interest therein, or in any part thereof, and which adjudges that the defendant is entitled to the uninterrupted flow of the streams therein referred to.

Also, an appeal by the defendant, Lewis W. Davis, from that portion of said judgment as adjudges "that the plaintiff is the owner of such streams and the lands thereunder in fee, to the extent of the boundaries of the lands owned by Theodorus Smith at the time of his death, subject to said right of flowage of the defendant, Lewis W. Davis, who has no interest therein except such right of flowage, and no costs are awarded to either party."

*John L. Hill*, for the plaintiff.

*N. S. Ackerly*, for the defendant.

WOODWARD, J.:

The question involved in this action is the title to the fee of certain lands underlying the waters of Willow ponds and the contributing streams in the town of Smithtown, Suffolk county, and, incidentally, the rights of the respective parties to the use of such ponds for the purpose of boating, fishing, etc. The plaintiff invoked the equitable jurisdiction of the court to restrain the defendant from excluding the plaintiff from its enjoyment of the lands, and the fishing and boating incident to such lands as underlie the waters of the Willow ponds. The trial court found that the title to the lands beneath the waters of the ponds belonged to the defendant, and that the plaintiff held the fee to the lands underlying the streams contributing to these ponds, with a right of flowage in the defendant. From the judgment entered both parties appeal, each asserting title to the fee of all the lands involved, the plaintiff conceding to the defendant a right to use the waters of the ponds for milling purposes. The ponds in dispute were created by the damming of the waters of the streams involved in this controversy for milling purposes, and the plaintiff, which is concededly the owner of the lands abutting upon the ponds, contends that the title of the defendant extends only to the use of the waters for milling purposes, while the fee of the land under the common-law rule follows the lands adjacent. The defendant, on the other hand, holds that he is the owner, not of the easement, but of the ponds, including the fee to the land.

The plaintiff traces its title back to the royal charter by King Charles II to James, Duke of York, and the patent, dated March 25, 1677, by Governor Andros, to Richard Smith, but it is hardly necessary for the purposes of this discussion to follow the various transfers which make up the chain of title. It is conceded that some time prior to 1813 the title to the property in dispute was in Paul Theodore Smith. He died on the 13th day of May, 1813, leaving a will, in which it was ordered that his executors should "set off 150 acres of land on the west end of the farm I own in Smithtown and six acres of meadow off of the west side of the meadow I own in Islip, all of which land and meadow, with a

privilege of stacking hay in my lot and occupying a suitable proportion of my hay house and pasturing his team while getting the hay, I give unto my son Richard, to him, his heirs heirs* and assigns forever;" and "all the remaining part of the lands and meadows which I own in Smithtown and Islip I give equally share and share alike to my two sons Caleb and Theodorus, to them, their heirs and assigns forever, with all the privileges and appurtenances thereunto belonging or appertaining meaning and my will is that the land and buildings which I have given my son Caleb a deed for one equal half part of is to be reducted* out of the share so as to make an equal division between my two sons last mentioned as though said deed had not been executed to my son Caleb." There is no specific description of the property conveyed, and whether Paul Theodore Smith was at the time of his death seized of the fee of the Willow ponds is purely a matter of conjecture, and it is upon this point that the right of the plaintiff to the judgment demanded must hinge. If Paul Theodore Smith did not own the fee to these ponds at the time of his death, then no title passed to Theodorus and Caleb Smith, through whom the plaintiff claims. In the year 1817, and on the sixteenth day of September, about four years and four months after the death of Paul Theodore Smith, one Moses Brush and his wife Abigail conveyed by warranty deed to Theodorus Smith and Richard Smith, sons of Paul Theodore Smith, "all that certain piece or parcel of land situate, lying and being in the town of Smithtown, and bounded, to wit: Beginning at the northwest corner of the stony lot orchard, so called; running southerly by the road leading to the mills, eight rods; thence east at right angles, ten rods; thence north at right angles, eight rods; thence west by the land of Theodore Smith, containing one-half an acre. Also the one equal undivided half part of the mills, pond and stream, formerly the property of Paul T. Smith, described and bounded as follows, viz.: Beginning at the south end of the old sawmill dam, thence running by said dam northward and by the road leading to Theodore Smith's and westerly and southerly by the land of Theodore Smith; thence southward across the Bridge Branch brook; thence eastward by the land of Moses Brush to the place of beginning, the

---

* *Sic.*

line of said bounds with the exception of the first to be at the edge of the mill pond, containing by estimation thirty acres more or less, within said bounds." Following this, and on the 4th day of May, 1820, Moses Brush and Abigail, his wife, conveyed to Richard Smith, for and in consideration of the sum of $3,700, all the property "beginning at the turnpike road, thence eastwardly by the lands of Epenetus Oakley to the Main River; thence southerly by said river to the lands of Theodorus Smith; thence northerly and southerly by said Smith's land to the new mill road; thence by said road and Caleb Smith's land and Theodorus Smith's land to the Bridge Branch road; thence by the mill pond to the old mill dam; thence by said dam and the turnpike road to the place of beginning, also one other tract bounded easterly by the main river and Theodorus Smith and northerly by Epenetus Oakley called the Stony Lot Orchard. Also the one equal undivided half part of the mills and pond, containing within the aforesaid bounds by estimation two hundred acres, be the same more or less within the aforesaid bounds. Together with all and singular the privileges, profits, hereditaments and appurtenances to the same belonging or in any wise appertaining." This was a warranty deed, and the grantee, it will be observed, was one of the sons of Paul Theodore Smith, from whom the plaintiff claims title. It is urged by the plaintiff that no title is shown in Moses Brush, but it may be urged with equal force that the plaintiff has failed to show title in Paul Theodore Smith at the time of his death to the property in dispute, and the fact that his own sons were the grantees in the warranty deeds issuing within seven years of his death, and at a time when they must be presumed to have all of the facts fresh in their minds, is, in our opinion, sufficient to justify the trial court in reaching the conclusion that " Upon the whole evidence I think a grant of the premises to Brush or to his grantors must be presumed to have been made by Paul T. Smith." As was said by Mr. Justice CULLEN in the case of *Deuterman* v. *Gainsborg* (9 App. Div. 155): "The question, however, is one solely of fact, and while it is a question of fact not arising from conflicting statements of witnesses, but from inferences from written documents, we think the same rule applies to its determination by the trial court as applies to other questions of fact; that is to say, this division of the court is not justified in reversing the

determination of the trial court unless it affirmatively appears that the trial court clearly erred in its decision. (*Aldridge* v. *Aldridge*, 120 N. Y. 614; *Barnard* v. *Gantz*, 140 id. 249.)" In applying this rule, Mr. Justice Cullen says: "If I were compelled to answer, as a historical question, whether the deed to Horton conveyed this pond or not, and not suffered to plead insufficient knowledge, I would say that it did, though I am strongly of opinion that if such were the case the pond, as it then existed, must have been much smaller than the present one. But I am not prepared to say that the contrary conclusion arrived at by the trial court was clearly erroneous." In the case at bar no such question presents itself to our mind. It seems clear to us that the only reasonable deduction from the evidence is that the title to the Willow ponds was in Moses Brush, and that, as is said by the trial court, "the defendant must be adjudged to be the owner of the mills, dams and ponds and lands under the same in fee." Moses Brush is the first person, in so far as the evidence goes, who asserts title to the particular mill dam and ponds, as distinct from the property surrounding the same; the plaintiff has established no title to this particular property, and a court of equity would have mistaken its mission had it attempted to give the plaintiff a better title than it has itself been able to establish. The defendant and his grantors have been in the actual possession of this property, asserting, in so far as the property was capable of manifesting such an assertion, full ownership from the time of the grant by Moses Brush to Richard and Theodorus Smith, and the plaintiff recognized such ownership by entering into a lease of the property with the defendant; and it was only after the plaintiff had become possessed of the quitclaim deed of certain of the grantees of the owners of the adjacent property, in which mention was made of the property of the defendant, that it undertook to assert title to the fee of the land, which would carry with it the right to use the ponds for boating, fishing, etc. The plaintiff concedes that the defendant has an easement in the ponds, but it seems clear to us that there is much stronger reason, in so far as the evidence discloses the history of these ponds, for the conclusion, that the defendant owns them in fee. No easement is granted by Moses Brush; his grant, if it conveys anything, conveys the fee to the land under these ponds, and

upon the question of adverse possession, or the gaining of rights by prescription, the evidence is as clear in the one case as in the other.

It is unnecessary to follow the chain of title through all of the various owners. It is clear that the defendant holds all of the title which the grantors of Moses Brush could give, and, as there is no reason to believe that Moses Brush did not own the property which he granted to the sons of Paul Theodore Smith, the plaintiff has failed to make its title to the fee of the land under the Willow ponds, and the judgment, in so far as this branch of the case is concerned, should be affirmed.

We are equally clear that under the rule laid down above there is no ground for disturbing the conclusion of the trial court in respect to the ownership of the fee of the lands under the contributing streams. The defendant has shown no title to these streams which would convey to him the fee of the land over which they run, and as the plaintiff concedes his right to the uninterrupted flow of water into his ponds we are unable to discover that any substantial right of the defendant will be interfered with if the judgment of the court below is affirmed. " It seems to be the settled rule of law in this State," say the court in the case of *Deuterman* v. *Gainsborg* (*supra*), " that, in the case of streams, ponds or lakes, the adjoining proprietors are *prima facie* and presumptively the owners of the soil under water to the center of the stream or ponds, as in the case with highways. This presumption may be rebutted, but till rebutted the presumption remains." The defendant has not been able to establish any title to the fee of the land under the streams conveyed in the original grant from Moses Brush; the boundary lines did not embrace the streams, and the only right which he gained was a right to the uninterrupted flow of the waters of these streams into his ponds. " It is a principle, recognized in the jurisprudence of every civilized people from the earliest times," say the court in the case of *Sweet* v. *City of Syracuse* (129 N. Y. 335), " that no absolute property can be acquired in flowing water. Like air, light, or the heat of the sun, it has none of the attributes commonly ascribed to property, and is not the subject of exclusive dominion or control. As Blackstone observes (2 Bl. Com. 18): ' Water is a movable, wandering thing, and must, of necessity, continue common by the law of nature; so that I can have only *a*

temporary, transient, usufructuary property therein.' While the right to its use, as it flows along in a body, may become a property right, yet the water itself, the *corpus* of the stream, never becomes or, in the nature of things, can become the subject of fixed appropriation or exclusive dominion, in the sense that property in the water itself can be acquired, or become the subject of transmission from one to another." In the matter of the ponds the defendant successfully rebutted the presumption of ownership in the proprietors of the lands adjacent by showing a grant of the particular property upon which the pond is located, but no such title appears in the streams contributing their waters to the ponds, and the presumption must be, therefore, that the title to the fee of the lands underlying these streams is in the plaintiff, who is concededly the owner of the premises bordering upon the streams, and the mention of the stream in the original conveyance gives the defendant no right of property, either in the waters of the stream or in the lands underlying them, except to the extent already conceded by the plaintiff in this action.

The trial court, in its opinion, has sufficiently discussed the other questions involved, and, in our opinion, has met all the requirements of equity in disposing of this case.

The judgment should, therefore, be affirmed.

All concurred.

Judgment affirmed, without costs.