**1. ADMINISTRATOR OF DECEASED EXECUTOR—VOLUNTARY ACCOUNTING.**

Code Civ. Proc. § 2606, providing that an administrator of a deceased testamentary trustee may voluntarily account for any of the trust property which has come to his possession, does not authorize an administratrix of a deceased testamentary trustee to voluntarily account for a devastavit of the trustee, and procure a decree against herself as such administratrix, so as to conclude the sureties on the trustee's bond.

**2. TESTAMENTARY TRUSTEES—BOND.**

Where an executor was not required to give bail as an executor, but only as a testamentary trustee of one bequest, the bond will not relate back to the time of his appointment as executor, or the receipt of money on an assignment of a mortgage belonging to the estate, so as to make the sureties on the bond liable for a devastavit occurring before the filing of the bond, nor so as to make the admissions or declarations of the executor prior to that time competent as against the sureties.

**3. SAME—LIABILITY OF SURETIES.**

In order to recover against the sureties on the bond of a testamentary trustee who was also the executor, it must be shown that he had assets in his hands, as trustee, during the time for which the sureties were bound.

**4. SAME—ADMISSIONS BY TRUSTEE.**

The admissions or declarations of a testamentary trustee to show that he had assets in his hands as trustee are not admissible against the sureties on the trustee's bond, unless made after the bond was executed and in the transaction of business relating to the trust estate.

**5. SAME.**

Payments of interest on a legacy by the executor, who was also the testamentary trustee thereof, where the receipts recite that the payments

were made as executor. are not admissions, as against the sureties on the trustee's bond, that he had received the fund as a trustee.

6. SAME.
> An executor does not hold a fund as trustee until the trust fund has been legally ascertained, identified, and separated from the general funds of the estate, and the trustee has entered on the duties of his office of trustee, as distinguished from his functions as executor.

In the matter of a voluntary account of Carrie Williams, as administratrix of German Wilbur, deceased, of his proceedings as trustee under the will of Philip Snyder, deceased. Proceeding dismissed.

J. Wm. Taylor, for petitioner.
J. W. Tucker, for sureties Lane and Marsh.

BARNUM, Acting Surrogate. Philip Snyder died in or about the year 1872, leaving a will which was admitted to probate by the surrogate of this county, and letters testamentary thereon issued to German Wilbur, January 11, 1873. German Wilbur died April 16, 1892, without having filed an inventory of the estate of Philip Snyder. He never rendered an account of his proceedings as such executor nor as trustee, and was never discharged or removed. No decree was ever made by this court in the estate. December 19, 1896, Carrie Williams, the petitioner in this proceeding, was appointed by this court administratrix with the will annexed of Philip Snyder, deceased. January 30, 1897, the said Carrie Williams was appointed by this court administratrix of the estate of German Wilbur, deceased. The will of Philip Snyder contained the following provision:

"Third. I give and bequeath to my daughter Helen Wright six hundred dollars, but to be kept in trust for her use and benefit by German Wilbur, the said Wilbur first to give proper bail, and then to receive for the use and benefit of my said daughter Helen Wright the said six hundred dollars out of my estate, and pay or cause to be paid to her, the said Helen, the interest annually on the same, for her use and benefit; and, in case of sickness or any lack of proper care, the said Wilbur shall give to her such part or portion of the six hundred dollars as her needs may require; or, if she should disease or die, then the said amount, or such portion as may be left, is to be divided between her children, to share in equally; and, if she should leave no heirs, their sum to be divided between such of my children as are named in this my last will and testament."

By a subsequent clause of the will, German Wilbur was named as sole executor thereof. No provision was made requiring Wilbur to give security for any part of the estate, except the $600 mentioned in the third clause. July 5, 1873, German Wilbur filed a bond, with Albert Lane and John Marsh as sureties, which was duly approved by the surrogate. The condition of the bond is "that Wilbur shall faithfully discharge the trust reposed in him as trustee of * * * the goods, chattels, and credits of Helen Wright under the will of Philip Snyder, deceased, * * * and also obey all orders of the surrogate of the county of Otsego touching the administration of the estate committed to him. * * *"

This is a voluntary proceeding commenced by Carrie Williams for an accounting. The account filed states that the petitioner renders an account of her proceedings as administratrix with the will annexed of Philip Snyder, and of the proceedings of German Wilbur, deceased,

as executor, and states that it "contains a statement of all facts affecting German Wilbur's and her administration of said estate." The account contains the statement:

"I charge German Wilbur, as executor, as follows:
With trust estate as per Schedule H......................... $  600  00
With amount of legacies paid...............................   775  00
                                                          $1,375  00

Credit.

With the amount of Schedule H paid over.................. $  775  00

Leaving a balance................................... $  600  00"

Schedule H contained statements, among other things, to the effect that German Wilbur, as executor, received the $600 trust fund from the estate, as petitioner is informed and believes; that, as administrator with the will annexed of Philip Snyder, the petitioner had made diligent inquiry as to the condition of the assets of the estate which passed into the hands of German Wilbur, as executor and testamentary trustee under said will, but had not been able to find any part of the same, nor any part of the trust estate; that German Wilbur died insolvent, without having accounted for any part of the trust estate; that she is unable to discover any assets of the estate of Philip Snyder, or of the estate of German Wilbur, as executor and trustee, and that she is unable to discover any property belonging to German Wilbur, either individually or as trustee; that, on information and belief, German Wilbur, during his lifetime, had converted the $600 trust fund to his own use, and at the time of his death would have been unable to have reported any of the same to his credit; that as the administratrix of German Wilbur, deceased, she is unable to report any property or assets belonging to the estate of German Wilbur at the time of his death. The petitioner seeks to obtain a decree against herself, as administratrix of German Wilbur, adjudging that he received the $600 trust fund as testamentary trustee, and directing the petitioner, as such administratrix, to pay the same.

Section 2606, under the provisions of which the petitioner seeks the desired relief, provides that, "where an executor or * * * testamentary trustee dies, the surrogate's court has the same jurisdiction, upon the petition of his successor * * * to compel the executor or administrator of the decedent to account, which it would have against the decedent if his letters had been revoked by a surrogate's decree. * * *" It will be observed that the above-cited provision only provides for a compulsory accounting, and this is a voluntary proceeding. The section contains the further provision: "And an administrator of a deceased executor * * * or testamentary trustee may voluntarily account for any of the trust property which has come to his possession. * * *" This clause seems to provide only for a voluntary accounting for such trust property as has come to the possession of the accounting party. As no property has come to the possession of the petitioner, I am at a loss to find any authority for this proceeding under this provision. The section also provides that

"with respect to the liability of the sureties in, and for the purpose of maintaining an action upon the decedent's official bond, a decree against his * * * administrator, rendered upon such an accounting has the same effect as if an execution issued upon a surrogate's decree against the property of decedent had been returned unsatisfied during his lifetime. * * *" A decree against the administratrix of German Wilbur herein, if the proceedings are regular and the trial free from reversible error, unless it should be set aside by this court under the provisions of section 2481, would be conclusive against the sureties in an action upon the official bond. Martin v. Hann, 32 App. Div. 604, 53 N. Y. Supp. 186; Douglass v. Ferris, 138 N. Y. 192, 33 N. E. 1041; Altman v. Hofeller, 152 N. Y. 498, 46 N. E. 961. Before the amendment of 1884, the surrogate's court had no power to compel the administrator of a deceased executor to account for his proceedings as such executor. Prior to that amendment, the remedy in case of the death of the executor or trustee was by action in a court of equity. Deposit Co. v. Pratt, 25 Hun, 26; Williams v. Kiernan, Id. 362; Haines v. Meyer, Id. 416; Redf. Prac. Sur. Cts. (5th Ed.) 749. The section originally provided only for a compulsory accounting. By the amendment of 1891, the clause was added permitting the representative of the "deceased * * * executor * * * trustee" to voluntarily account for any of the trust property which has come to his possession. The jurisdiction of this court to entertain proceedings for an account of the proceedings of a deceased representative by his administrator, and to grant a decree against the representative of the second estate, comes entirely from section 2606. It seems to me that this court is confined to the exercise of the power directly conferred by the statute, and that the administratrix of German Wilbur cannot voluntarily account for a devastavit of German Wilbur, and procure a decree against herself as such administratrix, which shall conclude the sureties. I think the amendment of 1891 was intended to confer upon the administrator of the deceased executor or trustee authority to voluntarily account for such assets of the first estate as had come to his possession; that it does not confer upon the administrator of a deceased executor or trustee power to come into court for the purpose of prosecuting a claim against the estate which he represents and should protect against unjust claims. Even if he believes the claim to be just, I do not think the amendment gives the administrator power to wield a sword against the estate which he has been designated to protect.

The sureties upon the official bond of German Wilbur were cited herein, and appeared by attorney, and, among other numerous objections, the following appear: "That the petitioner herein cannot, as administratrix or otherwise, maintain this proceeding; that the petitioner, as the personal representative of German Wilbur, cannot maintain this proceeding." It is apparent to me that they did not waive any of the points above suggested, and that they are in position to raise them hereafter, as they may be advised. This matter has been before me once before, and was dismissed because I thought that no decree could be made, as the matter was then presented, which would

be decisive of the controversy. Inasmuch as the matter has been twice presented at considerable expense to the parties, I think it would be better for me to express my views upon the facts as presented.

The evidence, briefly stated, is as follows: May 20, 1863, Philip G. Snyder executed to the decedent, Philip Snyder, a mortgage covering real property situated in the town of Roseboom, in this county, to secure the payment of $2,800. March 29, 1873, German Wilbur, as executor of Philip Snyder, deceased, executed an instrument in writing, the material parts of which are the following:

"For and in consideration of $1,819 to me in hand paid by John Marsh, of Middlefield, N. Y., the receipt whereof is hereby acknowledged, I, German Wilbur, executor of the last will and the estate of Philip Snyder, deceased, do hereby sell, assign, transfer, and deliver to the said John Marsh the within-described mortgage, and the bond accompanying the same, the lands therein described, and the money due or to grow due thereon; * * * and I covenant that there is due or to become due on said mortgage the sum of $1,819, and that the same is good and collectible, and I guaranty the payment of the same."

Hannah Wilbur, widow of German Wilbur, testified, in substance, that her husband told her that he purchased two tombstones for $50; that she did not know anything about the other funeral expenses; that her husband told her that Philip Snyder was not in debt to any one at the time of his death; that German Wilbur paid her $200 legacy, and about $20 additional as residuary legatee; that she gained all her knowledge as to the condition of her father's property from her husband after her father's death; that her legacy was paid to her about a year after the death of Philip Snyder; that German Wilbur told her during the last year of his life that he had had the $600, but had not then got it and could not pay it; that she knew of German Wilbur paying interest to Helen Wright on the $600; that the receipts signed by Helen Wright to German Wilbur were in his possession at the time of his death. Elizabeth Hollister testified that German Wilbur paid to her her $200 legacy and about $45 as residuary legatee. She did not remember when he paid it to her, but testified that it was paid all at one time, about a year after the death of her father. Letters testamentary upon the will of Philip Snyder, deceased, were granted to German Wilbur, January 11, 1873. The date of the death of Philip Snyder does not appear. Six receipts were found among the papers of German Wilbur after his death, signed by Helen Wright. Four of them read, in substance, as follows: "Received of German Wilbur, executor of the estate of Philip Snyder, $36.00; that being the interest now due." Two of them read, in substance: "Received of German Wilbur, executor of the estate of Philip Snyder, $36; that being the amount of interest due on her trust money." The receipts bear date in April, 1881, 1884, 1885, 1886, 1888, and 1889. Mrs. Hollister also testified that she knew of Helen Wright receiving interest money from German Wilbur up to about six years before the trial; that she "took care of the money, and would take the money to her, and she would sign the receipts, and send them back to German Wilbur." No evidence was offered by the sureties

The testimony upon which the petitioner seeks to obtain a decree which will compel the sureties to pay the $600 and interest consists largely, if not entirely, of admissions and declarations of German Wilbur. It may be assumed at the outset that the admissions and declarations shown to have been made by German Wilbur would have been competent against him if living, and against his administratrix if he had died leaving an estate. A much more serious question arises in determining how far, if at all, the admissions and declarations of German Wilbur can be used as a basis for an adjudication the only effect of which would be to compel the sureties to pay the amount. The third clause of the will of Philip Snyder provides that German Wilbur should first give proper bail, and then "to receive the * * * $600 out of the testator's estate. * * *" He was not required to give "bail" as executor. He could properly have received all the estate as executor prior to giving security. If he received $1,819 upon the assignment of the mortgage, it was received as executor, several months before the bond was given. I do not think that the bond would relate back to the time of his appointment or the receipt of the money, in such way as to make the sureties liable for a devastavit which occurred before the filing of the bond, nor so as to make the admissions or declarations of German Wilbur prior to that time competent against the sureties. The reasons which cause the bond of an executor usually to relate back so as to make the sureties upon his bond liable for a conversion of the assets of the estate which occurred before the giving of the bond do not obtain in this case. An executor's bond is designed to cover a prior improper use of the funds of the estate. The bond in question was given to permit German Wilbur to receive money, as trustee, which he could not receive in that capacity before giving the bond. It was given as an indemnity against his wrongful acts subsequent to its execution. I think the bond in question is governed in this respect by the principles which control the bond of a public officer, and that the sureties are not liable for defaults committed before the giving of the bond. Bissell v. Saxton, 66 N. Y. 55; Scofield v. Churchill, 72 N. Y. 567. It cannot be presumed, under any circumstances appearing herein, that German Wilbur had received any money as trustee before the bond was given. It was essential to show, in order to recover against the sureties, that Wilbur had assets in his hands, as trustee, during the time for which they were bound. Kellum v. Clark, 97 N. Y. 393. The assignment executed by German Wilbur, as executor, recites a consideration of $1,819. As against the sureties, the question arises whether it is anything beyond an admission of German Wilbur that he had received $1,819 as executor. If not being an admission made before the bond was given, and as executor, is it competent, as against the sureties, to establish the fact that German Wilbur received the sum of $1,819 as executor? Assuming the evidence sufficient to show that he received, as executor, $1,819, we will consider the evidence bearing upon the liability of the sureties growing out of its receipt by him.

It is insisted that the payment by the executor to Mrs. Wilbur and Mrs. Hollister of the amount of their legacies, and something

additional, as residuary legatees, proves that the estate was more than sufficient to pay all debts, funeral expenses, and legacies. It appears that the payments were made about a year after the death of Philip Snyder, but there is no evidence to show the date of his death, so that we are left without evidence to show whether the legacies were paid before or after the execution of the bond. At the furthest, the payment of the legacies would be no more than an admission by him as executor. It cannot be assumed without evidence that his admissions were made after the bond was given. The admissions of German Wilbur are not competent to bind the sureties unless they are a part of the res gestæ, and his declarations cannot be regarded as of the res gestæ unless it appears that they were made after the bond was executed and in the transaction of business relating to the trust estate. The payments to the legatees were not made in the course of the performance of business, for which the sureties were bound, and they are not shown to have been made during a period of time following the execution of the bond. The admissions and declarations of German Wilbur to Mrs. Wilbur to the effect that he had had the $600, but had not got it then and could not pay it; that Philip Snyder was not in debt to any one at the time of his death; that he purchased tombstones at an expense of $50,—were not made as a part of any business transaction relating to the estate of Philip Snyder. They were mere narratives of a past transaction. It does not appear that Mrs. Wilbur was interested at that time in the estate of Philip Snyder or the $600 trust fund. I do not think the evidence is available against the sureties. Judge Earl said in Hatch v. Elkins, 65 N. Y. 496, which was an action upon a bond of indemnity:

"In such a case, the party holding the indemnity claiming loss against his indemnitor must prove it by evidence competent against him. He cannot prove it by mere admissions or statements of the principal, however formally made. The declarations of the principal made during the transaction of the business for which the surety is bound, so as to become part of the res gestæ, are competent evidence against the surety, but his declarations subsequently made are not competent."

The judge quoted from 1 Greenl. Ev. 187, the following:

"The surety is considered bound only for the actual conduct of the party, and not for whatever he might say he had done, and therefore is entitled to proof of his conduct by original evidence when it can be had, excluding all declarations of the principal made subsequent to the act to which they relate."

The same principle is recognized in Kellum v. Clark, 97 N. Y. 392; 1 Rice, Ev. §§ 212, 240; Bank v. Darragh, 1 Hun, 111; Moore v. Meacham, 10 N. Y. 207; Abb. Tr. Ev. 474–513; Horn v. Perry, 14 Hun, 411.

Payment of the interest on the $600 to Mrs. Wright, standing, as it does, alone, is not sufficient as an admission by Wilbur to charge the sureties. The receipts all recite that the payment was made as executor, indicating that they did not regard him to have yet received the fund in the capacity of trustee. If the payment may be regarded as a concession by Wilbur that he had received the trust fund, it furnishes no evidence as to whether he squandered it before or after the execution of the bond. The evidence is not sufficient to show the condition of the estate of Philip Snyder at the time of his death. No

inventory having been filed, and the executor never having rendered an account of his proceedings, it apparently cannot be proven at this late day whether there was any surplus left for legatees after the payment of debts and the expenses of administration. The persons interested in the trust fund could have compelled German Wilbur to render an account, and, if there was a surplus applicable to the payment of the $600 fund, it was within their power to procure a decree to be made directing the executor to pay the same to himself as trustee, and they could thereafter have compelled him, from time to time, to render an account of the condition of the trust fund. There is very great doubt whether any liability occurred under the bond in the absence of such judicial proceeding, placing the fund in his hands as trustee. Wilbur was entitled, as executor, to receive all the assets of the estate, and hold them as such, until such time as his accounting should show a fund in his hands properly applicable to the trust fund. If he did not then give a bond, the fund could not come to his hands as trustee, and, on his failure to give security, his successor could have been appointed, to whom he could have been compelled to pay the money. Under the circumstances appearing herein, I do not think that it can be held that German Wilbur ever received any part of the $600 as trustee of the property of Helen Wright. The authorities seem to uniformly hold that an executor cannot be held to hold a fund as trustee until the trust fund has been in some way legally ascertained, identified, and separated from the general funds of the estate, and the trustee has entered upon the duties of his office of trustee as distinct and separate from his functions as executor. In re Hood's Estate, 98 N. Y. 369; Cluff v. Day, 124 N. Y. 203, 26 N. E. 306; In re Underhill, 35 App. Div. 436, 54 N. Y. Supp. 967; Johnson v. Lawrence, 95 N. Y. 165.

Proceeding dismissed.