DEUTERMAN et al. v. GAINSBORG et al.

(Supreme Court, Appellate Division, Second Department. November 23, 1900.)

1. APPEAL AND ERROR—NEW TRIAL.

Where an order for a new trial provided that at defendants' election the testimony already taken should be read in evidence on the new trial with the same force as if the witnesses were re-examined, subject, however, to any legal objections which were taken by either party on the former trial, it was error for the judge on the new trial to admit all proof adduced on the first trial, some of which had been declared erroneously admitted.

2. SAME—HARMLESS ERROR—EVIDENCE.

The admission of evidence tending to establish the location of property conveyed by a certain deed was harmless error where the court found the location of the land to be substantially as claimed by the parties offering the evidence.

3. COSTS.

In proceedings to enjoin defendant from polluting the waters of a pond, plaintiff claimed $5,000 damages, and defendant made a counter demand for twice that sum, but plaintiff's demand was withdrawn, and the proceeding became transformed into a suit on defendant's part to establish title to one-half the land under the pond. Held, that the land was the subject of the controversy, and, as there was no evidence as to its value, it was error for the court in awarding costs to award the defendant an additional sum under Code Civ. Proc. § 3253, subd. 2, providing that the court may, in certain actions and special proceedings, allow an additional sum not exceeding 5 per centum on the sum recovered or claimed "or the value of the subject-matter involved."

Appeal from special term, Westchester county.

Bill by Charles Deuterman against Samuel H. Gainsborg and another. Upon death of plaintiff, his executors were duly substituted.

Judgment for defendants, and plaintiffs appeal. Modified and affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HIRSCHBERG, and JENKS, JJ.

Eugene Frayer, for appellants.
Wilson Brown, Jr., for respondents.

WILLARD BARTLETT, J. This complicated controversy relates to the ownership of certain land under water east of the middle line of a long mill pond or lake in Westchester county variously known at different times in its history as "Willets' Pond," "Horton's Mill Pond," "Deuterman's Pond," "St. Mary's Lake," and "Silver Lake." This body of water, now about 47 acres in extent, has been formed by the action of an ancient dam placed across a running stream, which has thus been deepened and widened. The present suit was begun by the late Charles Deuterman, and has been continued by his executors. The plaintiffs claimed to own the whole of the lake, and complained that the defendants had commenced to drain impure water and obnoxious matter into it, thereby injuring and polluting the pond, and rendering the same unfit to procure ice from. The prayer of the complaint was for an injunction restraining such acts, and for $5,000 damages; but the case was tried solely as suit for injunction relief. The answer did not question the plaintiffs' ownership of the lake west of the middle line, but alleged that the plaintiffs were not the owners of the pond or any land east of the center or original stream of the said lake, and that the defendant Gainsborg was the owner of the uplands on the east side of the pond, and all the lands thereof under water to the center—or, more properly speaking, to the thread or middle line—of the original stream. For an affirmative defense the answer further alleged that the plaintiffs threatened to interfere with the defendant Gainsborg in the enjoyment of his own land; and the defendants prayed, not only for a dismissal of the complaint, but that the defendant Gainsborg might have his boundary line between the plaintiffs' lands and his own under the waters of the pond fixed and established, and also his water rights and privileges in said pond. The only relation of the defendant Pollock to the litigation grew out of the fact that he was a contractor employed by the defendant Gainsborg in doing some of the acts which the plaintiffs alleged to be in derogation of his property rights in the land in or about the pond in question. The case was tried before Mr. Justice Dykman, and resulted in a defeat of the plaintiffs, and a judgment declaring that the defendant Gainsborg was the owner of that portion of the lake and the land under the waters thereof which lay east of the center of the stream or channel, while the plaintiffs were held to own only the western part of the pond and the adjacent uplands, on the opposite side. That judgment was affirmed by this court in October, 1896. Deuterman v. Gainsborg, 9 App. Div. 151, 41 N. Y. Supp. 185. Thereafter the plaintiffs moved at special term for a new trial upon the ground of newly-discovered evidence, and their motion was granted. The second trial, which took place be-

fore the same justice as the first, has terminated in a like judgment in favor of the defendant Gainsborg; and this judgment must also be sustained, unless the case, as now presented, differs essentially from that which was before us upon the first appeal. While there are differences in the record, due to the presence of evidence which was not adduced upon the original trial, we do not deem them sufficient to require or justify a reversal. The case turns now, as it turned then, upon the scope and effect of a deed from Eleazer Yeomans to John Horton, dated May 3, 1744. Did or did it not convey that eastern portion of the existing mill pond, which is the subject of controversy in this action? On the previous appeal, Mr. Justice Cullen said:

"If I were compelled to answer as a historical question whether the deed to Horton conveyed this pond or not, and not suffered to plead insufficient knowledge, I would say that it did, though I am strongly of opinion that, if such were the case, the pond, as it then existed, must have been much smaller than the present one. But I am not prepared to say that the contrary conclusion arrived at by the trial court was clearly erroneous. Further, I am of the opinion that, while the facts recited may show that the balance of the probabilities are in favor of the proposition, still it may be doubted whether they are sufficient, as legal evidence, to establish it. Therefore I think we are not justified in disturbing the finding of the trial court."

The same situation confronts us upon the present appeal. We are not convinced that the trial court reached a wrong result, even in the light of the additional evidence. An elaborate review or analysis of the proof would be tedious to the reader, as it would not call for the consideration or discussion of any question of law which might be serviceable in other litigations. The record comprises 768 printed pages, and there are in all 362 pages of briefs. These have been studied with due care, to make sure that no point has been overlooked which might demand a change in the conclusion expressed by Judge Cullen in the opinion cited. It is necessary to consider in the present opinion only such matters as could not have been passed upon in our previous decision.

Earnest complaint is made because the plaintiffs were compelled to retry the case before Mr. Justice Dykman, who had decided against them in the first instance. We are not able to discover in the record the bias or prejudice of which counsel thus complain. Long and complex equity cases like this are generally tried before a resident judge of the county in which the venue is laid, if there be a supreme court justice residing there. Mr. Justice Keogh, although living in Westchester county, could not try this case, for it was he who commenced the action, when at the bar, as the attorney for the original plaintiff. Under the circumstances it was natural and proper that the new trial should be had before Mr. Justice Dykman, the other resident judge; and the changes favorable to the plaintiffs which he made in some of the findings in consequence of the newly-discovered evidence certainly indicate that he took up the case for the second time with an impartial mind, and a disposition to decide it fairly, irrespective of the previous judgment.

There was one manifest error in procedure, but this does not in-

validate the result. The order for a new trial provided that at the election of the defendant the testimony already taken in the cause should stand and be read in evidence from the stenographer's min-utes on such new trial with the same force and effect as if the same witnesses were recalled and examined and so testified upon such re-trial, "subject, however, to any legal objections to any part of such testimony or evidence which were taken by either party upon the former trial." This provision was construed by the learned trial judge as a requirement that all the proof adduced upon the first trial must be admitted, subject to the objections and exceptions then taken, and as an order which precluded him from changing any of the rulings which were made upon the first trial in respect to the admission or exclusion of evidence. I think that this view was er-roneous. The judge at special term who granted the new trial on the ground of newly-discovered evidence could not have intended to constrain the trial judge to adhere to rulings which the appel-late division had condemned, or which the trial judge himself, upon reflection, might conclude were incorrect. The contrary assumption led to the admission for the second time of the testimony of Loretta Horton, which this court had declared upon the former appeal to be inadmissible. Nevertheless, if we could hold, as we did then, that its reception was harmless, I see no escape from the same conclu-sion now, since it could have done no more injury to the plaintiffs on the second trial than it did on the first.

The exclusion of certain testimony and documents offered as tend-ing to establish the location of the property conveyed by the deed of Brundage to Yeomans, dated December 28, 1730, appears also to have been harmless, as the court on this trial found that location to be substantially what the plaintiffs claimed. But, even if there had been no such finding, the reception of evidence of this character could hardly be insisted on as a matter of right. It did not constitute original proof, but was designed merely to assist the court in making comparisons and drawing conclusions based on other evidence in the case; and, like a computation by an expert witness, founded upon facts and figures already before the court, it may be received or not, very much in the discretion of the trial judge. In respect to this Brundage deed of 1730 it was found wholly impossible on the first trial to identify the mill property therein described as the mill property of the plaintiffs in this action. Upon the second trial, however, the further evidence enabled the court to locate the premises conveyed by that deed, and to say:

"I find it was a mill and land therewith situate about in the same locality where plaintiffs' mill is to-day, near the ledge of rocks, and that said deed conveyed to Eleazer Yeomans some uplands and a part of the pond and lands under water of the southerly end of the present pond in question, but only so much of said pond as lies west of the stream in said pond, and within the town of White Plains, and which was ponded upon lands east of the stream only by permission of the east side owners, and not by any grant, and he con-veyed to Eleazer Yeomans only such mill and part of a pond on the west side of such stream referred to in said deed as the 'Long Meadow Brook,' and that neither said Brundage nor Eleazer Yeomans had acquired the lands under the waters of said pond on the east side of said stream."

The first part of this finding was a change in favor of the plaintiffs. They lost, as well as gained, however, by the introduction of the newly-discovered evidence. The next conveyance relied upon by the plaintiffs is a deed from Walter Williams to Eleazer Yeomans, under date of February 23, 1739, which conveys a certain lot called the "Great Lot," at Brown's Point, in the township of Rye, "containing in estimation 80 acres, be the same more or less." On the second trial the learned judge locates this lot as lying south of the present dam, whereas upon the first trial he had located it as situated partly above the dam, or north of it. We cannot say that this change of view does not receive sufficient support in the proof. We have considered very carefully the exhaustive arguments of counsel in regard to the effect of the new evidence concerning the title to the tract known as "Brown's Point" and the situation of this 80-acre great lot, and we think that the conclusions reached by the learned trial judge on this branch of the case are well sustained by that portion of his opinion which deals with it.

In addition to the differences which have already been noted as to the facts which were made to appear upon the first and second trials, it should be stated that the proof now shows the ownership of land by one David Ogden in the vicinity of the pond, who was doubtless the person referred to by that name in the Yeomans-Horton deed of 1744. But, notwithstanding the new evidence in the case, and the changes which it has caused in some respects in the findings of fact, it remains as difficult now, as it was when Mr. Justice Cullen wrote for affirmance four years ago, to say whether that deed embraced the premises in controversy or not. Under the rules which should guide the action of an appellate court, as he pointed out then, we are not at liberty to interfere with the conclusion of the judge at special term, since we are very far from being able to say that he clearly erred in his decision.

While these views lead to the affirmance of the judgment in its main features, there are two respects in which it requires modification. An additional allowance of $500 has been granted to the defendant Gainsborg. We can perceive no legal basis for this award. The action in the beginning was an equity suit for an injunction. In its later stages it seems to have been transformed into a suit by the defendant Gainsborg to establish his title to the land under water opposite his upland. It is true that there was a demand in the complaint for $5,000 damages, and that there was a counter demand in the answer for twice as much; but the plaintiffs' claim for damages was withdrawn, and there was really no litigation of any such issue. In permitting the estimate of an additional allowance upon the sum "claimed" the statute does not refer to a merely formal claim for damages in an equity suit which has been either expressly or tacitly abandoned by the party. Code Civ. Proc. § 3253, subd. 2. In such a case "the value of the subject-matter involved," if it has a value, must be the guide. Assuming here that the western part of the mill pond in question is the subject-matter of this controversy, we are without any evidence as to its value, and hence without anything to support the extra allowance made at the special

term.   The judgment is also too broad in declaring that the defendant Gainsborg is entitled to the use of the whole of the lake, and the waters thereof, in common with all the riparian owners.   There is nothing in the case which establishes any right on his part to occupy or use any portion of the lake except that which has been adjudged to be his property; certainly nothing which would justify him in invading that portion which is conceded to belong to the plaintiffs.

With the modifications which have been suggested, the judgment should be affirmed.   All concur.