Whittaker *v.* Burhans.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, May 7, 1872. *Miller*,P. J., and *P. Potter* and *Balcom*, Justices.]

———————•◄►•———————

## WHITTAKER *vs.* BURHANS.

The owner of the soil in flat lands adjoining the shore of a navigable stream, over which the tide ebbs and flows, may maintain an action of trespass against one who, without his consent, enters upon and uses the same for fishing purposes, driving stakes therein, and mooring his boats there, and occupying the soil in drawing in seines and nets, so as to interfere with the rights of the plaintiff therein.

THIS action was brought to recover damages for the defendant entering upon a piece of flat land covered by the waters of the Hudson river, which the plaintiff claimed to own; which land is described in the plaintiff's complaint as follows, viz : "All that portion of the flats or fishing ground in the Hudson river, lying below the mouth of the Esopus creek, opposite a place called Glasco, and which was allotted to Christina Demyer in a division of the property of William Cockburn, deceased, being bounded on the northeast by the fishing ground conveyed to Edward and Walter Miller, and extending from thence southerly, in length twenty-seven chains."

The plaintiff alleged that the defendant, after entering upon the said flats or fishing grounds, drove divers stakes thereon, and used the ground for drawing nets and fishing thereon, doing damage, &c., and entirely excluding the plaintiff from the use and enjoyment thereof as a shad and herring fishery; to the plaintiff's damage, &c.

The defendant denied the allegations in the complaint,

and claimed that the spot on which he fished was a part of the navigable waters of the Hudson river, where the tide ebbs and flows, in which all the people of this State had a common right to fish; and that the acts the defendant done on the *locus in quo* were in fishing, &c., as he had the right to, &c.

Another defense is set up in the answer, but it need not be noticed.

The action was tried at the Ulster circuit in October, 1870. By direction of the judge, the jury found a verdict in favor of the plaintiff, against the defendant, for six cents damages, subject to the opinion of the court at the general term.

The counsel have stipulated that the words, "subject to the opinion of the court at the general term," may be struck out, and that the court may decide the case as though it were brought to the general term on a case and exceptions, to be heard in the first instance at the general term.

The defendant's counsel took exceptions to the rulings of the judge against him, on the trial. And so the questions discussed and decided by the general term, were properly raised at the circuit.

*M. Schoonmaker* for the plaintiff.

*T. R. Westbrook*, for the defendant.

*By the Court*, BALCOM, J. I am of the opinion that the plaintiff established his right to the soil where the defendant did the acts complained of, tracing his title from the crown of Great Britain; and I shall hold that he is the owner of the *locus in quo*, viz., the land described in the complaint. The premises are not in the channel of the Hudson river, but west of it, between it and the west shore, and adjoining the west shore of that river, and in the county of Ulster. The tide usually ebbs and flows

Whittaker *v.* Burhans.

over the land. At high tide the water is usually from six to eight feet deep on the land, and at low tide from two to three feet deep. But the water has been known to be so low that there was no water on the land. The water is usually so low there that the land is called flats; and the land may have been higher than it now is, and out of water so much as to have been properly called an island, in the last century.

Vessels, including sloops and steamboats, sometimes sail over the land when the tide is high enough to float them there.

The premises have been used a great many years in fishing for shad and herring, as a place on which to fasten boats and to stand upon and walk when drawing in seines and nets. Fishermen, with their boats, leave the flat, and after sweeping their net round through the channel of the river, east of the flat, draw it in over the flat into their scow. They drive poles or stakes on the flats from 90 to 120 feet west of the channel, to which they fasten their scows. They fish out in the channel and draw their nets upon the flat; they throw about one third of their nets over the flat; the rest they throw into the channel, and draw the fish over the flats into the scows.

The defendant drove his stakes on the ground, first at one place, and afterwards at another place, and used the ground for fishing, so that the plaintiff lost the use of such ground.

The plaintiff does not claim the exclusive right of fishing on the premises in dispute, nor does he deny the use of the river over the premises as a highway for boats, vessels and river craft, when there is sufficient water to float them; but he claims the ownership of the soil, and the exclusive right of its use as such. The plaintiff claims that the defendant, in driving his stakes upon the flat, and using the flat to moor his boats and draw his nets and

seines thereon, was a trespasser upon the exclusive rights of the plaintiff.

Drift.nets are not drawn over the flat, but in the channel of the river, and the flat is not used in fishing with such nets.

The great question in the case is, not the amount of damage the plaintiff has sustained by the acts of the defendant, but whether his.ownership of the soil entitles him to maintain trespass against the defendant for driving stakes into it, and thus fastening boat to it, and using it in catching fish there, to the damage of the plaintiff.

The case of *Brink* v. *Richtmyer*, (14 *John.* 255,) is not only an authority for holding, in this case, that the plainplaintiff is the owner of the land where the acts complained of were committed by the defendant, but also for maintaining the action on the ground that the defendant was a trespasser, for driving stakes into the soil and mooring boats there, and using the soil in taking fish there.

The decision in *Rogers* v. *Jones*, (1 *Wend.* 237,) is an authority for sustaining this action. And so is the case of *Lowndes* v. *Dickerson*, (34 *Barb.* 586.) But I cannot say the same of the case of *Martin* v. *Lessee of Waddell*, (16 *Pet.* 367.) It is possible that it may be distinguished from this case, for the reason that it was an action of ejectment, to recover 100 acres of land, lying " beneath the *navigable waters* of the Raritan river and bay, where the tide ebbs and flows," and the principal matter in dispute in that case was the right to the oyster fishery in the public rivers and bays of East New Jersey. But whether that case is distinguishable from this or not, I think we should follow the decisions of our own courts, by which this action is sustainable, not for the defendant taking fish in the water over the flat, or land in question, but for using the soil of the flat under that water, by driving stakes into it, and by means thereof fastening boats to such soil, so as to interfere with the rights of the plaintiff in and to that soil.

If these views are correct, the defendant's motion for a new trial should be denied, and the plaintiff should have a judgment in the action, with six cents damages, besides costs.

