Supreme Court, Herkimer County, October, 1903. Unreported.

In the Matter of the Petition of PATRICK W. CULLINAN to Revoke the Liquor Tax Certificate of LAFAYETTE F. STANTON.

*William E. Schenck,* for petitioner.

*J. D. Smith,* for respondent.

To THE SUPREME COURT: The court having directed the undersigned to give his opinion in the matter, I do report as follows. Upon the evidence in the matter in my opinion the facts are as follows:

That on the 9th day of May, 1903, the respondent. Lafayette F. Stanton, who resided at a point on the Beaver River in the town of Webb, county of Herkimer, State of New York, some three miles above what is known as the Beaver River dam, which dam was erected several years before that time by the State of New York for the purpose of creating a reservoir for the storage of water for canal purposes, made and filed with the county treasurer of Herkimer county, an application in the ordinary form for a liquor tax certificate for the time beginning May 9th, 1903, in which application, said Stanton stated among other things that the location where the business was to be carried on was near State Dam, Beaver River, town of Webb — see Exhibit C, question 3. He further stated in response to question 4 in said application that he was the owner of said premises. He further

stated in response to question No. 10 in said application that such traffic was actually lawfully carried on in such premises on March 23, 1896, and further stated in answer to question No. 11 in said certificate that said premises had been continuously occupied for such traffic in liquor since 1890. Upon this application which with the usual bond, was filed with the County Treasurer of Herkimer county on May 11, 1903, Tax Certificate No. 24,828 was issued to L. F. Stanton by F. G. Teall, County Treasurer of Herkimer county, May 11, 1903.

From the evidence in the case it appears that on May 9, 1903, the building in which the liquor traffic was carried on by said J. F. Stanton under said certificate was not located at or near the State Dam on Beaver River. It does not appear from the evidence where it was then, but on May 22, 1903, this building which consisted of a small one-story frame structure having but one room and one door to the same and resting on a platform about 12 x 18 feet, which platform supported on barrels which floated in the water thus sustaining the platform and building was floated down the Beaver river from somewhere above on the said river and stopped or was tied up to the bank about four hundred to five hundred feet above the State dam. Prior to that date it was not at or near the said State dam. The evidence does not show where it was until on and after May 22, 1903. It does appear from the evidence that on May 22, 1903, the said float was floated down to the State dam until one side or corner of it struck against the dirt filling of the dam where it became fixed and was fastened there, one end resting against the bottom on the dirt slope of the dam and the other floating on the water sustained by the barrels. It appears from the testimony that on May 23, 1903, the respondent sold liquor there in that building to the witness Ambrose M. Waite. It also appears that that building was not at the dam or near it until May 22, 1903, and that it was never there before the spring of 1903.

There is no evidence upon the question of where this building was in 1890 or 1896 if in existence. It is alleged in the petition and not denied by the answer that on May 9, 1903, when said application was made by respondent for said tax certificate this float and building was on the Beaver River near the house of said La Fayette F. Stanton about three miles east of the said State Dam and that on or about May 22, 1903, said Stanton floated the same down for about three miles to its location at the State

Dam where it was located, as shown in the photograph Exhibit B, with one side or corner resting upon the land of the State of New York adjoining said dam and the remainder of the same being in or upon the waters of said Beaver river which allegations not being denied by the answer I assume are the actual facts.

On June 13, 1903, the said building and float were in the same position above described near the State Dam and the respondent Stanton was engaged in the traffic of liquor in said building. On that day the liquor tax certificate No. 24,828, issued to said Stanton as above stated was publicly posted and exhibited in said building, or saloon conducted in the same as testified to by the witness E. W. Steele. On that occasion the respondent Stanton and several other men were in the said building all more or less intoxicated and the respondent's hands were covered with blood and a man by the name of Badgers had a cut on his face near his eye and blood was running down on his clothes and several men were lying on the floor or propped up against the lounge or wall in an intoxicated condition. The evidence can lead to but one conclusion and that is that the Respondent Stanton and the man Badgers had been fighting and that the place was then disorderly.

On Sunday, June 14th, 1903, the door of the building or saloon and the entrance to the room on said premises where the liquors were sold and kept for sale was unlocked and kept open and the witness Steele and Leander Badger, Ed. Noonan, Steve Moore and several other men who were not members of the respondent's family were allowed to go in and out of said saloon and to remain there on that day. The said saloon or building in which said liquors were sold is stated by the witnesses to consist of one room and from the photograph, Exhibit B, seems to be but one story high. It does not appear from the evidence that the respondent or his family resided in said building or saloon or that it was necessary for the ingress or egress of said Stanton or his family or servants to have said door or entrance to said room open on said Sunday, June 14th, 1903, and the allegation in the petition that the same occurred and was unlawful, under the evidence in the case not being denied by the answer, must be taken as true in my opinion.

The land over and against which the said float rested or floated and the banks adjacent thereto were part of certain lands which were permanently appropriated by the State of New York for the

purpose of creating a storage reservoir for canal purposes on the 14th day of July, 1898, under chapter 388 of the Laws of 1894. The survey thereof included the lands in question and extended for some distance back from the present banks of said river as raised by the building of the State Dam.

See petitioner's Exhibit A.

The respondent, Mr. L. F. Stanton, does not claim to be or have been the owner of the land or any portion of it at or near the Beaver River Dam in his answer nor is there any proof offered to that effect. In fact he does not seem to advance any theory which would excuse or explain his answers to the questions Nos. four, ten, eleven and eighteen except that the application was made out at the brewery at Herkimer and he signed it without reading it.

Subdivision 1 of section 11 of the Liquor Tax Law was evidently intended to apply to buildings standing on the land as subdivision 4 of section 11 provides that licenses for the sale of liquor on cars, steamboats and vessels shall pay a different and fixed rate of license. If the structure in question was not a car, steamboat or vessel then it must be a building standing upon the land of another or else it is a nondescript structure and prohibited from being a place for the traffic of liquor by subdivision 3 of section 24 of the Act. I think that it must be assumed that the structure was a building standing or resting upon the land of another and that the filing of the written consent of that owner with the County Treasurer of Herkimer county was necessary for the granting of the certificate to Mr. Stanton under subdivision 6 of section 17 of said Liquor Tax Law and if that consent was not had or filed the failure to so file was material.

It seems to me clear that the State of New York was that owner. It was held in *Sweet* v. *City of Syracuse, et al.,* 129 N. Y. 334 " that lands appropriated by the canal authorities for the use of the canal, under the statute, are held by the State in fee " citing *Heacock* v. *State,* 105 N. Y. 248, and *Mark* v. *State,* 97 id. 572.

The State being the riparian owner is presumed to have title to the middle of the stream until the contrary is shown and the bed of the stream and banks thereof are the property of the riparian owner subject only to the easement of the public for the passage as on a highway and the riparian owner may use the land or water of the river in any way not inconsistent with this

easement. (*The Chenango Bridge Co.* v. *Paige*, 83 N. Y. 178; *Gouverneur et al.* v. *N. I. Co.*, 134 Id. 355; *Deuterman et al.* v. *Gainborg*, 9 App. Div. 151; *Wyandanch* v. *Davis*, 33 Id. 604; *Hinckel* v. *Stevens*, 165 N. Y. 171.)

The Beaver River is a public highway for the purpose of floating logs and timber under chapter 759 of the Laws of 1894, but this gave the public only the paramount right of navigation and it could not land on private property along the shore without the consent of the owner. (*Morgan* v. *King*, 35 N. Y. 719; Angell on Watercourses, p. 719; *Wetmore* v. *Brooklyn Gas Co.*, 42 N. Y. 391.)

The public cannot even station itself at stakes driven into the soil beneath the stream without trespassing upon the exclusive right of the riparian owner. *Whitaker* v. *Burns*, 62 Barb. 237, and the case of *Adam* v. *Rivers*, 11 Barb. 390, seem to state the true doctrine " subject to the right of mere passage, the owner of the soil is still the absolute master. A highway is nothing but an easement comprehending merely the right of all individuals in the community to pass and repass with the incidental rights in the public to do all the acts necessary to keep it in repair. This easement does not comprehend any interest in the soil nor give the public the legal possession of it."

It would seem to be the law that Mr. Stanton by running his wandering saloon aground on the State land and leaving or fastening it there occupied said land with said building, was a trespasser thereon and could and did not acquire any title to the land on the bank or under the bed of the stream and thus could not be said to have had or acquired any title to any of the land against or upon which his building rested and that his statement in his application for said liquor tax certificate in response to question No. 4 when he stated that he was the owner of said premises was and is false and that the said statement was a material one.

It is my opinion that the statement of the respondent, L. F. Stanton, in response to question ten in said application blank where in answer to the question " Was such traffic in liquors actually lawfully carried on in such premises on March 23rd, 1896? " he answered " Yes " was false and that the statement was a material one.

It is my opinion that the statement of the said respondent L. F. Stanton in response to question eleven in such application blank

where in answer to the question "Since what date have said premises been continuously occupied for such traffic in liquors?" he answered "1890," was false and that the statement was a material one. It is my opinion that the statement of the said respondent L. F. Stanton in response to question eighteen in said application blank, where in answer to the question "Have such premises, described herein as those in which traffic in liquor is to be carried on, been continuously occupied for such traffic since such consents previously given were filed?" he answered "Yes," was false and that the said statement was a material one.

It is my opinion that the disorderly condition of the said premises upon June 13th, 1903, and prior to that date as shown by the testimony of the witnesses, Edgar W. Steele and James Dubar was such as to be and constitute a material and actual violation of the conditions of the bond filed with the clerk of the County of Herkimer with the said application for the said liquor tax certificate.

It is my opinion that the leaving on Sunday, June 14, 1903, of the door and entrance to said saloon or place where the liquor was trafficked in by said L. F. Stanton under said certificate No. 24,828, from the adjoining premises open and unlocked by the said respondent, L. F. Stanton, when it was not necessary for the ingress or egress of himself or his family or servants and the admitting to such room of the witnesses Edgar W. Steele and Leander Badger, Will Coleman, Ed. Noonan and Steve Moore, and allowing them or some of them to remain there were violations of subdivisions a and g of § 31 of the Liquor Tax Law.

It is my opinion that the said liquor tax certificate No. 24,828, issued to said Lafayette F. Stanton by the County Treasurer of Herkimer county should be revoked and cancelled.

All of which is respectfully submitted.

Dated, October 17th, 1903.

J. CHARLES MELDRAM,<br>
*Referee.*